No. 88-274

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

CODY MIX,

        Defendant and Appellant.

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Rosebud,
The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    James G. Hunt, Helena, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
Peter Funk, Asst. Atty. General, Helena
Marvin Quinlan, County Attorney, Forsyth, Montana
Gary A. Ryder, Deputy County Attorney, Forsyth, Montana

Submitted on Briefs: July 7, 1989

Decided: October 16, 1989

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Sixteenth Judicial District, Rosebud County, Montana, of a conviction of deliberate homicide, a felony, following a jury trial. The appellant appeals his sentence of 100 years for the deliberate homicide and an additional ten-year sentence for the use of a weapon in the commission of the crime. We affirm.

On September 2, 1987, the body of Sarah Sloan was found on the banks of the Yellowstone River near the town of Forsyth, Montana. Investigating officers found that the victim's body had suffered numerous chest wounds. In addition they found considerable evidence around the body including a fresh tire track, a fresh shoe print, a bloody fingerprint, and drag marks which indicated that the victim's body had been dragged from a vehicle to the spot on the river bank.

Because the romantic relationship between the victim and the appellant was well known in the small town of Forsyth, officers went to the appellant's residence. There they observed the tires on the appellant's car were similar to the tire tracks found by the victim's body. The officers also observed what appeared to be blood on the ground near the car. As a result of this investigation, the appellant was questioned early that afternoon. He was later released by local officials. On September 4, 1987, a search warrant was obtained for the appellant's residence and car. As a result of this search, and based upon the observations of the investigating officers, the appellant was arrested later that day and charged with deliberate homicide. Following his arrest, the appellant maintained his innocence, claiming he and the victim had been drinking at several bars, but they

2

had parted company in the early hours of September 2, 1987, following a minor argument.

On September 21, 1987, counsel for the appellant filed a Notice of Intent to rely upon the defense of mental disease or defect. Thereafter the appellant was committed for psychiatric examination. After undergoing several months of pretrial psychiatric evaluation, the appellant returned for trial. He testified at trial that some time in January of 1988 he began to regain his memory. At that time, he admitted he caused the death of Sarah Sloan but claimed he acted in self-defense.

The evidence indicates appellant and Sarah had visited several bars during the evening of September 1, 1987, before they returned to his address about 1 o'clock the following morning. Appellant testified that in preparing to go to bed, he was in the process of taking off his shoes when Sarah attacked him with a plastic fan base. He further testified that he went out of his bedroom and down the hall as Sarah continued to hit him about the head and neck. Appellant testified he proceeded to the kitchen where he picked up a knife from the kitchen sink and stabbed her in the chest. He further testified that after the initial stabbing, Sarah continued to attack him in the same manner, and he continued to stab her until she collapsed.

At trial, Dr. K.H. Mueller, the pathologist who performed the autopsy, testified that the victim's death was caused by five stab wounds to her chest area. He testified one of the wounds was inflicted with enough force to pierce the victim's sternum and another was deep enough to penetrate her spine. In addition, Sarah had multiple blunt force facial injuries and a defensive knife wound on one hand.

Appellant testified at trial that after the stabbing, he dragged Sarah out to his car, drove to an area by the

3

Yellowstone River, dumped Sarah's body and returned to his home. He testified he then cleaned the kitchen floor, rinsed off the knife used to kill Sarah and went to bed.

Various law enforcement officials who testified stated that some twelve hours after the alleged confrontation, the appellant showed no signs of having been in a life-and-death struggle and that he made no mention of Sarah's attack on the night of the crime. In addition, the appellant's home showed no signs of a violent struggle. An investigating officer testified that the plastic fan base allegedly used by Sarah in the claimed attack on the appellant did not contain her fingerprints. Appellant testified at trial that the fan base was essentially undamaged.

During the trial, appellant attempted to establish that Sarah was an aggressive, domineering and impulsive woman. The State submitted rebuttal testimony to establish that the appellant had beaten Sarah in the past and that she was afraid of his propensity for violence.

Five issues are presented on appeal:

1. Whether the trial court committed reversible error when it did not grant appellant's motion for mistrial based on the prosecution's opening statement.

2. Whether the trial court committed reversible error when it allowed three prosecution rebuttal witnesses to testify to an alleged prior act of appellant.

3. Whether the trial court committed reversible error when it denied the admission of certain medical records of the victim.

4. Whether the trial court committed reversible error when it denied the admission of a statement allegedly made by the victim.

5. Whether the trial court committed reversible error when it allowed the prosecution's forensic scientist to

4

testify as an expert about the velocity and direction of blood splatters found in appellant's kitchen, and when it allowed an investigating officer to testify that the location of the victim's death evidenced a struggle.

As to the first issue, the appellant alleges that three improper comments were made by the deputy county attorney, comments which were highly prejudicial, made in bad faith and each statement was so prejudicial to the appellant that a mistrial was warranted. The statements referred to, made by the deputy county attorney in his opening statement, are as follows:

> On September 2nd, 1987, the body of Sarah Sloan was found discarded along the banks of the Yellowstone River, west of Forsyth.
>
> That very day, the Defendant was arrested for murder and twice denied any involvement. On January 15th, 1988, for the first time, he filed a notice of self defense. This was approximately 135 days after the body of Sarah Sloan was found.
>
> To be very honest with you, I was surprised when [appellant's attorney] told the jury, during selection . . .

At this point appellant's attorney objected, to which the District Judge sustained the objection and advised that "Counsel will be restricted to their opening statement as to facts that they intend to prove and not what Counsel was surprised at."

The second comment cited by appellant as the basis for reversal, was also stated during the prosecution's opening statement:

> The man sitting at the Defendant's table, at this point, is presumed to be innocent. He has the right to a jury trial, he has a right to remain silent,

5

he has the right to a court appointed
counsel.

The third statement made by the counsel for the
prosecution during his opening statement, to which
appellant's attorney objected and which is the final basis of
claimed error, is the following:

> After reviewing this evidence, you
> will have decisions to make, whether
> this Defendant is mentally ill, you'll
> be instructed on the law in that area.
> Whether the Defendant was acting . . .

It is appellant's contention that the first statement
regarding the delayed notice of a theory of self-defense is
both an improper comment on the appellant's silence and is
prohibited by Griffin v. California (1965), 380 U.S. 609, 85
S.Ct. 1229, 14 L.Ed.2d 106; and Chapman v. California (1967),
386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. It is appellant's
position that any reference made to a delay of notice of
filing a theory of defense; the fact that he had court
appointed counsel; the defense of mental defect or disease;
and finally the cumulative effect of improper statements made
during trial, all necessitate a reversal of his conviction.

In State v. Johnson (Mont. 1988), 760 P.2d 760, 45
St.Rep. 1653, this Court spoke to the problem of improper
remarks made by counsel during trial. The Johnson opinion
reviewed Griffin, supra, and a number of cases which
previously discussed this problem in Montana including State
v. Gladue (1984), 208 Mont. 174, 677 P.2d 1028; State v.
Wilkins (Mont. 1987) 746 P.2d 588, 44 St.Rep. 1794; and State
v. Gonyea (Mont. 1987), 730 P.2d 424, 44 St.Rep. 39. In
those cases this Court has warned the prosecution and
discussed the risk of reversal in the event the prosecution
makes improper comments either in opening statements or in
witness examinations. The appellant notes, and we agree,

6

that only overwhelming direct evidence against a defendant prevents these kinds of remarks from becoming reversible error.

The comments by the prosecution were improper and unnecessary to the trial of this case. While the record does not suggest any intentional comment was made regarding the change of defense or the silence of the defendant, we conclude the remarks were objectionable. In view of the compelling evidence, and with no significant contradictory evidence, we find there was no need for any comments of the nature referred to above. We again admonish counsel not to comment, even indirectly, on the silence of the accused.

Having found these remarks objectionable, we must consider the Chapman rule to determine if the error was harmless beyond a reasonable doubt. The testimony evidence submitted by the State, including the extensive and unrebutted testimony of all of the witnesses, including the testimony of the appellant, clearly established the appellant's guilt. We will not address all of the evidence of this crime. The evidence clearly indicates an unprovoked attack on Sarah, and that in all probability, any one of the five stab wounds could have caused her death. We emphasize here that the evidence of appellant's guilt is overwhelming. The District Court gave numerous instructions during the course of the trial concerning the State's burden of proof. The admonition to the jury concerning the remarks made following the motion for mistrial shows the trial court's effort to impress upon the jury the right of the defendant to remain silent.

We conclude that the evidence in this case was so overwhelming that the comments can be classified as harmless error beyond a reasonable doubt. In so doing we uphold the District Court's denial of a motion for mistrial.

The second issue is whether the District Court erred when it allowed rebuttal witnesses to testify to an alleged prior act of appellant.

As part of his defense, the appellant testified that his general character is one of a peace loving man who found it necessary to kill Sarah Sloan because she had viciously attacked him without provocation. As a result of the extreme force used by Sarah, the appellant claimed it was necessary for him, in self-defense, to pick up a knife and stab her five times to protect his own life. Anticipating this defense, the State filed a Just notice in advance of the trial, (State v. Just (1979), 184 Mont. 262, 602 P.2d 957), and a precautionary instruction was given at the time of the introduction of the claimed improper evidence, and another precautionary instruction was read to the jury at the end of the trial.

Testimony objected to by appellant was that of the prosecution's rebuttal witness, Lois Taylor:

> Q Do you recall an incident on May 20, 1987, concerning papers that she [Sarah] had drawn up?
>
> A I don't know what date it was but I know that I had -- she come into the cafe with some papers. There'd been something happen the night before, the police had been called. So she came in and she had her three days off and she came in and she was very upset and she said, "Lois, would you --
>
> [Defense counsel]: Objection, hearsay.
>
> Q Okay, Lois, if you could just explain what she did --
>
> A Okay, she handed me some papers and asked if I would take --
>
> [Defense counsel]: Object as hearsay.

8

THE COURT: Anything that she said is hearsay and the objection will be sustained.

Our review of the transcript shows this is the only statement, within the meaning of Rule 801, M.R.Evid., made by any of the witnesses identified by the appellant as having testified to hearsay. The testimony at issue was properly admissible as evidence of "other crimes," and was properly admissible under Rule 404(a)(1), M.R.Evid., and did not include inadmissible hearsay.

The objection of the defense was first apparent and contests basically what was admitted as evidence, claiming that the evidence of "other crimes" should have been excluded; second the appellant contests the evidence was hearsay and should have been excluded.

This Court has long recognized the principle embodied in Rule 404(b), M.R.Evid., which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It _may_, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or _absence of mistake or accident_. (Emphasis added.)

The admissibility of such evidence is also governed by specific substantive and procedural rules. Those substantive requirements are: (1) similarity between the crime charged and the previous crime testified to; (2) nearness in time between the crimes charged and the previous crime; (3) tendency to establish one of the purposes detailed in Rule 404(b), Montana Rules of Evidence; and (4) determination that the probative value of the evidence outweighs any

potential prejudice to the defendant. State v. Jensen (1969), 153 Mont. 233, 239, 455 P.2d 631, 634.

The procedural requirements are: (1) notice to the defendant prior to trial that evidence of other crimes, wrongs or acts will be introduced; (2) an admonition by the judge to the jury when the evidence is introduced that it is admitted solely for one or more of the accepted purposes stated in Rule 404(b); and (3) a cautionary jury instruction providing that the evidence is admitted for the purpose earlier stated and not to try and convict the defendant for prior wrongful conduct. Just, 184 Mont at 274, 602 P.2d at 963-64.

Had the challenged evidence been introduced in the prosecution's case-in-chief, the above substantive and procedural requirements would strictly apply. Here, however, the appellant was accused of the deliberate homicide of Sarah Sloan, and the evidence admitted concerned an alleged assault by the appellant on Sarah within six months of the homicide. Appellant had already denied any aggressive tendencies on his part toward the victim. Such evidence on rebuttal bore out his potential intent, knowledge, and absence of mistake or accident. In addition, the evidence was extremely probative as the appellant's self-defense claim was based on his characterization of the victim as an aggressive, impulsive, domineering person. Under these circumstances, such evidence can hardly be viewed as prejudicial given the nature of the appellant's defense. Rule 404(a), M.R.Evid.

While the precautionary instruction given at the time the evidence was admitted did not conform exactly to that suggested in Just, we do have both pretrial notice and a final jury instruction which are in strict compliance with all procedural requirements set forth in Just. In addition, this Court has clearly stated that any procedural

10

irregularities occurring after the prosecution gives notice under _Just_ will not be grounds for reversal unless objected to by a defendant. Here, no such objection was made.

As previously noted, the appellant's testimony opened the door regarding his peaceful character. The prosecution had every right to delve into evidence which tended to discredit the appellant's version of the critical events and his peaceful character, even if such evidence involved "other crimes." See, State v. Austad (1982), 197 Mont. 70, 641 P.2d 1373; State v. Stroud (1984), 210 Mont. 58, 683 P.2d 459; and State v. Kutnyak (1984), 211 Mont. 155, 685 P.2d 901. In each of those cases, the defendants were charged with violent offenses and when they testified on their own behalf, they claimed, one way or another, to be generally peaceful people. In each of those cases, the prosecution, as a part of its rebuttal, presented evidence to counter such an assessment, some of which focused on each defendant's involvement in "other crimes" of a violent nature. This Court has consistently held that such evidence was not subject to the traditional _Jenson-Just_ analysis, but rather was admissible under Rule 404 (a)(1), M.R.Evid.

We note that however objectionable the testimony may have been because it was conclusory in nature, it, with the exception of the one exchange previously quoted (Lois Taylor's testimony), it is clearly not hearsay and any other objection based on its conclusory nature has been waived. See, §§ 46-20-104(2), and 46-20-701(2), MCA. We fail to understand how these two examples of technical hearsay, which occurred during the examination of Taylor may have prejudiced the appellant. Section 46-20-701(1), MCA.

The third issue raised by the appellant is whether the trial court committed reversible error when it denied the admission of the victim's medical records.

11

The trial court refused to admit certain medical records of the victim from the Veterans' Administration Hospital of Miles City, Montana. According to the appellant, those medical records documented the violent and turbulent character of Sarah, and that her unstable personality eventually led her to attack the appellant, an attack so aggressive that it made him fear for his life.

Over a period of time Sarah had been treated by the Veterans' Administration Hospital for severe asthma. This treatment period began long before the time of her death. Appellant sought to admit testimony of a psychologist regarding Sarah's treatment and the psychologist's opinion regarding the prognosis of her recovery. The trial court concluded that the offered evidence was too remote in time to be relevant to the appellant's self-defense claim.

The record indicates that before the trial court made its exclusionary ruling, it conducted an in camera inspection of the medical records at issue and, in chambers, carefully detailed its findings with counsel. In addition, this same issue was raised as part of the appellant's motion for a new trial, which was filed some four days after the jury found the appellant guilty of deliberate homicide. The trial court, in its written order denying the motion, clearly detailed why it found that both instances of Sarah's treatment were too remote in time and that the subject matter was irrelevant to the defense alleged. We can find no manifest abuse of discretion in the trial court's ruling.

The fourth issue is whether the court committed error in denying the admission of a statement allegedly made by Sarah.

Testimony referred to is as follows:

A [By appellant]: We went out that evening. I thought best to get her out

12

of the house a little bit, maybe cheer her up if I could. I don't think we had more than two drinks, returned home. It was towards bedtime. Went in the bedroom, bent over to take my shoes off. Next thing I knew there was a -- something hit me in the back of the head and I was knocked out. I came to, went in the living room, Sarah was sitting there. I asked her what that was for. "What had I done wrong?" And she couldn't explain it.

Q  Did she say any more about that?

A  Well, she mentioned to me I was pretty lucky --

[By the prosecution]: Objection, hearsay.

THE COURT: Sustained.

The appellant argues that threats by a victim toward an accused should be allowed as an exception to the hearsay rule. He argues that his testimony would have been an attempt to establish that Sarah's statement constituted a "threat."

Under a reasonable construction of Rule 801, M.R.Evid., a portion of the testimony allowed is clearly subject to the hearsay objection. It appears no more than a recitation of a direct statement made by Sarah to which an objection could have been lodged. There is no indication in the record as to what the appellant's full answer would have been had he been allowed to continue his testimony. We note, however, that the objection appears for the first time on appeal.

We have long held to the principle that an appellate court in reaching its decision will only consider material ascertainable from the record. State v. Pease (Mont. 1987), 740 P.2d 659, 661, 44 St.Rep. 1203, 1205; and State v. Dess

13

(1984), 207 Mont. 396, 398, 674 P.2d 501, 502. Here, no offer of proof was made which would allow this Court to examine the type of hearsay exception claimed by the appellant. We find no merit in this issue.

The fifth issue is whether reversible error was committed when the District Court allowed the prosecution's forensic scientist to testify concerning velocity and direction of blood splatters and when it allowed an investigating officer to testify that the location of the victim's death evidenced a struggle.

The appellant argues that the prosecution's forensic scientist, Ken Konzak, was not qualified as an expert on the interpretation of blood splatters. He alleges that because Mr. Konzak testified as a lay witness on this subject, any testimony admitted was not based on the witness' personal knowledge since he was not present when the blood in question was splattered. We find this argument rather farfetched. Mr. Konzak is qualified as an expert witness in the field of forensic serology. In qualifying him as an expert, the following testimony was given at trial:

> Q Okay. Your occupation is a forensic scientist; is that correct?
>
> A Yeah, I specialize in the area of Forensic Serology.
>
> Q Okay. Could you explain to us what forensic serology is?
>
> A Forensic serology is the identification and typing of blood and body fluids. Determination of how those stains and materials are deposited and the factors that relate to those fluids, such as time of intercourse and things like that.

14

Q  Could you relate to us, have you been qualified as an expert in testimony in regard to forensic serology?

A  Yes, I have.

Q  Do you recall how many times, possibly?

A  63, 64, somewhere in there.

[Defense counsel]: Your Honor, we'd stipulate to the witness's credentials as a Forensic Serologist.

THE COURT: Very well.  He's qualified. (Emphasis added.)

It is to the following testimony that the appellant claims his theory of self-defense was greatly prejudiced by the testimony on blood disposition.

Q  [By the prosecution]:  Okay.  Do you see what appears to be some blood splatters in that photograph?

A  [By Mr. Konzak]: Yes.  The photograph depicts as it was described to me, the area in which several of these blood splatters I've just analyzed were taken from the kitchen door.

Q  Okay.  Can you -- in looking at the photograph of those blood splatters, can you tell anything about direction or force or anything like that?

A  We can tell -- which I'd have to see obviously closer up when the time comes, that the splatters come from lower on the -- towards the floor up at an angle, a low angle, up to roughly about thirteen to seventeen inches on the side of the door, but come from down going up, as opposed to having been dropped from above down on to the lower part of the door.

15

Q  So, is it fair to say, that would not
be consistent with someone standing above
the door and bleeding down upon it?

A  That's very true.  Also, there are
some smears over here which are caused as
a small splatter up against it, which
have been smeared by rubbing or some
other means of smearing, that don't
necessarily show the direction that I was
mentioning before.

How this testimony is unfairly prejudicial to the
appellant's theory of self-defense is not understandable.
Appellant testified that after he stabbed Sarah the final
time, she fell to the floor directly in front of the door
where the blood splatters were found.  The testimony of Mr.
Konzak is consistent with the opinion that the blood was
deposited on the door as it traveled in an upward direction,
deposited there by her body's impact with the floor.  The
admission of such testimony can hardly be characterized as
unduly prejudicial to appellant's theory of self-defense.

Appellant also claims that Detective Skillen improperly
testified that a violent struggle had occurred in appellant's
residence the night of Sarah's death because Detective
Skillen was not qualified as an expert on such matters.  A
review of the record shows that the detective was, in fact,
qualified as an expert on crime scene processing and
investigation.  Further, that Detective Skillen did not
testify as to the existence of a violent struggle.  In
addition, the appellant specifically stated he had no
objection to such a qualification.  The only objection came
when the detective testified to his findings, as follows:

Q  [By the prosecution]:  In your opinion
as an expert in crime scene investigator
[sic], did you see anything that appeared
to be a struggle at that residence?

16

[Defense counsel]: I'm going to object. I'm not sure, I don't believe there's been a foundation laid for that question. This witness might be able to testify as to what evidence he evaluated, but to draw that kind of a conclusion, I don't believe that the foundation can be laid and certainly has not been.

THE COURT: The objection will be overruled. And if the answer is in the affirmative, then I want to go into the foundation.

Q Would you answer the question.

A Yes, sir.

Q Okay. My question was did you see any sign of a struggle?

A Yes, sir.

Q What indicated to you that there was a struggle at that residence?

A The pattern of blood splatters and the area of the floor that had residue that appeared to have been a heavier deposit at one time on the kitchen floor.

Q Was there anything else at the defendant's residence which indicated to you that there was a struggle at that residence?

A No, sir.

Q You didn't see any furniture tipped over?

A No, sir.

Q Any objects that appeared to have been thrown through the house?

A No, sir.

Q Just the blood stains?

17

A  Yes, sir.

We find this testimony to be admissible by an expert who has been previously qualified.

The decision of the District Court is affirmed.

_____
John Conway Harrison
Justice

We concur:

_____
J. A. Turnage
Chief Justice

_____
L.C. Gulbrandson

_____
R.C. McDonough

_____
Justices

Justice William E. Hunt, Sr., did not participate in this opinion.

I concur in the result.

_____
John C. Sheehy
Justice

18