No. 91-516

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

    Plaintiff and Appellant,

-vs-

GEORGE BURNS,

    Defendant and Respondent.

APPEAL FROM:   District Court of the Fifth Judicial District,
               In and for the County of Beaverhead,
               The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Hon. Marc Racicot, Attorney General, Elizabeth L.
            Griffing, Asst. Attorney General, Helena, Montana
            Thomas R. Scott, County Attorney, Dillon, Montana.

        For Respondent:

            John S. Warren; Schulz, Davis & Warren, Dillon,
            Montana.

FILED

APR 17 1992

Filed:

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   January 16, 1992

         Decided:   April 17, 1992

_____
            Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an interlocutory appeal from an order of the Fifth Judicial District Court, Beaverhead County, Montana, denying the appellant's request to compel discovery of the respondent's personnel files from the Catholic Diocese. We affirm.

The issue on appeal is whether the District Court abused its discretion in refusing to grant the State's motion to discover the Catholic Diocese's personnel records concerning the respondent in a criminal case after the District Court conducted an in camera inspection.

Defendant and respondent, George Burns (Burns) was charged with Deviate Sexual Conduct under § 45-5-505(1), MCA (1989), and Deviate Sexual Conduct Without Consent under § 45-5-505(3), MCA (1989). Burns pled not guilty and later presented the prosecution with a list of approximately fifteen character witnesses. The prosecution applied for an investigative subpoena to obtain Burns' personnel records from the Catholic Diocese in Helena. The State purportedly sought information regarding reports of similar instances of misconduct, disciplinary actions, transfer records, as well as witness names to use in rebutting and cross-examining Burns' character witnesses. The Honorable Dorothy McCarter issued the subpoena which was served on Father John Robertson (Robertson), Chancellor of the Catholic Diocese of Helena. On the advice of counsel, Robertson refused to surrender the personnel records. Judge McCarter's order dated September 27, 1991, indicated that the parties agreed to an in camera review of the records in question on

September 23, 1991.  Accordingly, Judge McCarter ordered the _in camera_ inspection by the presiding trial judge, the Honorable Thomas A. Olson.[1]

Several telephone conferences ensued between Judge Olson and the parties.  Due to the dispute over whether to reveal the contents of the personnel records maintained by the Catholic Diocese, the District Court conducted an _in camera_ inspection of Burns' personnel file on September 25, 1991.  After hearing oral arguments, Judge Olson ruled that the information was not discoverable since it contained personal and private information and returned the records to the Diocese of the Catholic Church in Helena.

The State initiates this interlocutory appeal alleging that Judge Olson erred in barring discovery of the records.  The State maintains that unfair prejudice attaches because the file could contain reports of other similar related acts and relevant disciplinary proceedings against Burns which would qualify as other crimes, wrongs or acts evidence.  Further, the State alleges that lack of access to Burns' personnel records is prejudicial since they may contain the names of witnesses who can rebut Burns' character witnesses.

An _in camera_ review is a device often used at various stages throughout discovery and trial.  The purpose of the proceeding is to balance the privacy interests of the parties and the need to know.  The _in camera_ procedure can effectively offer protection to

_____

[1]Judge Olson took over the case after the presiding District Judge, the Honorable Frank M. Davis from Dillon, recused himself.

3

both parties by avoiding needless exposure of potentially harmful information. In State v. Thiel (1989), 236 Mont. 63, 768 P.2d 343, the in camera procedure was used to determine whether the contents of a social worker's file should remain private. We determined that the in camera procedure protected privacy rights. Thiel, 236 Mont. at 67-68, 768 P.2d at 345-46. In State v. Mix (1989), 239 Mont. 351, 781 P.2d 751, the in camera device was used to preview potentially damaging information before it was released. In Mix, medical records were sought for proof of character evidence. The trial court refused the request for access to the medical records after an in camera inspection on the grounds that the subject matter was irrelevant and too remote to the case. Mix, 239 Mont. at 360, 781 P.2d at 756. In In re Lacy (1989), 239 Mont. 321, 780 P.2d 186, we determined that the in camera procedure should be used to decide what information could be properly discovered. Lacy, 239 Mont. at 326, 780 P.2d at 189.

Accordingly, we conclude in the case at bar, that the District Court properly utilized the in camera procedure to weigh the effects of allowing discovery of the information contained in Burns' personnel files maintained by the Catholic Diocese.

While discovery is meant to be a broad tool in facilitating the resolution of lawsuits, it is not without restraint.

> The ability to question adverse witnesses, however does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Pennsylvania v. Ritchie (1987), 408 U.S. 39, 53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40, 54.

State v. Reynolds (1990), 243 Mont. 1, 8, 792 P.2d 1111, 1115.

4

The scope of discovery in criminal matters has been addressed by the American Bar Association as follows:

> In order to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protection of persons, effective law enforcement, the adversary system, and national security.

ABA Discovery and Procedure Before Trial, § 1.2 (1974).

When discovery of documents such as personnel records are at issue, privacy rights are undoubtedly at stake. Montana adheres to one of the most stringent protection of its citizens' right to privacy in the country. Mont.Const. Art. II, § 10. Montana's treatment of privacy rights is more strict than that offered by the Federal Constitution. Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 439, 649 P.2d 1283, 1286. It is against this constitutional backdrop that we view the case at bar.

The privacy interest in Burns' personnel records at the Catholic Diocese must be weighed against the State's need to discover the same. On appeal we seek to review whether the District Court adequately weighed and balanced these competing interests. On September 25, 1991, during an on the record, in camera review of the contents of Burns' personnel records, Judge Olson said:

> I find a document that is marked confidential, to be opened by the Bishop of the Diocese only. I open this with reluctance. All right. The Court has in summary fashion reviewed the documents. I will say on the record, I consider these to be highly personal documents, private documents of the Diocese. I will accord the State and the defendant the hearing if the State pursues that. And my impression here, which I state to the representative of the Diocese, that these documents will

5

not be disclosed.

On September 27, 1991, after hearing oral arguments Judge Olson stated:

> The Court has heard the arguments of counsel and I make the following ruling. The evidence seized by the investigative subpoena, or which is the subject of the investigative subpoena, is hereby returned to the Diocese of Helena intact, without disclosure to the State or the defendant. I do that upon the grounds that the Diocese has compelling rights of privacy to its personnel files and all of the documents contained therein. The file is clearly marked to be private. . . . We have the strongest privacy laws in this state of all of the states, and I find that the State cannot show compelling interest to crack open private church documents such as these. So, they are suppressed -- returned to the Diocese -- found to be off limits in this particular matter.

In Montana, we have adopted a two-prong test to determine whether issues of privacy are protected under our Constitution as follows:

> 1) Whether the person involved had a subjective or actual expectation of privacy; and,
>
> 2) Whether society is willing to recognize that expectation as reasonable.

State ex rel. Great Falls Tribune Co. v. Eighth Judicial Dist. Court (1989), 238 Mont. 310, 318, 777 P.2d 345, 350, citing Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 441, 649 P.2d 1283, 1287.

This test was used in Missoulian v. Board of Regents (1984), 207 Mont. 513, 675 P.2d 962. In Missoulian v. Board of Regents, "the Board of Regents was required to balance the public's right to know against the individual's right of privacy with respect to employment evaluations. There the right of the individual privacy was held to be paramount." Tribune, 238 Mont. at 319, 777 P.2d at

6

350.

While the two-prong test was not specifically set forth by Judge Olson, it is apparent from his comments in the record that the test is satisfied, barring discovery of Burns' personnel records.

The case at bar is similar to Mix, in that the State seeks leads relating to character evidence, as well as information about prior acts of misconduct such as disciplinary proceedings. As in Mix, an in camera inspection was conducted to weigh the interests of the parties. The record indicates that Judge Olson reviewed the personnel records and concluded that the right to privacy outweighed the State's need for any information contained in the records. Whether applying the two-prong test or the principles of Mix to the case at bar, we find that the District Court acted appropriately and did not abuse its discretion.

We note that Judge Olson's final comment in the previous recitations on the record is particularly informative. He stated that the personnel records would be off limits "in this particular matter." This is important since there is not blanket unavailability of personnel records nor should the outcome of this appeal point to that end. Personnel records may be discoverable given the correct set of circumstances and after appropriate balancing tests are considered which may include the in camera procedure previously discussed. For instance, in Montana Human Rights v. Billings, access to employment records was granted to the Human Rights Division to investigate possible violations of discrimination. However, when granting such access, we insisted on

7

specific protective measures to prevent dissemination of the discovered information. Montana Human Rights v. Billings (1982), 199 Mont. 434, 446, 649 P.2d 1283, 1290. The right to know the names of disciplined employees was greater than their right to privacy in Great Falls Tribune v. Sheriff (1989), 238 Mont. 103, 775 P.2d 1267. In Tribune v. Sheriff we said:

> When we balance the limited privacy interest of the law enforcement officers against the public's right to know which officers have been disciplined for unlawful acts, we conclude that the District Court was correct. The privacy interest of the officers does not clearly exceed the public's right to know. We note that we are not ruling that the entirety of any personnel files must be revealed.

Tribune v. Sheriff, 238 Mont. at 107, 775 P.2d at 1269.

We also mention that we fail to see how the State's alleged prejudice is created particularly with regard to the discovery of rebuttable character witnesses. Certainly, the State may research and locate witnesses to rebut Burns' character bolstering witnesses and while access to Burns' personnel records maintained by the Catholic Diocese may or may not expedite this process, the file is not the only means of locating these witnesses.

Absent an abuse of discretion we will uphold the rulings of the district court. "District courts have the discretionary power to control discovery activities in cases pending before them. We will overturn a district court order affecting discovery only if it amounts to an abuse of discretion." State of Or. ex rel. Worden v. Drinkwalter (1985), 216 Mont. 9, 12, 700 P.2d 150, 152. In the case at bar, the District Court considered the possible effects of releasing the Catholic Diocese's personnel records concerning Burns

8

and consequently, ordered an _in camera_ review of the file for relevant information. After the _in camera_ review the District Court heard arguments regarding exposing the contents of the file and determined that such exposure was improper. Prohibiting discovery of materials that are not probative is one of the functions of trial judges which is within their discretionary powers. In the case at bar, Judge Olson properly utilized his discretionary powers to prohibit discovery of Burns' personnel records. The competing interests of the parties were properly weighed by the District Court.

We affirm.

_____
                              Justice

We concur:

_____
          Chief Justice

_____

_____

_____

_____
          Justices

9

Justice Karla M. Gray, dissenting.

I dissent from the opinion of the majority. I would at very least reverse and remand for entry of the legal basis for the privacy ruling and for a new in camera review and entry of findings sufficient to permit review by this Court. For reasons that are completely beyond my understanding, this Court has decided to permit a right of privacy improperly asserted by the Roman Catholic Church to override all State interest in criminal investigation and prosecution. The consequences will be vast and incalculably damaging to law enforcement and prosecution efforts in Montana and to victims of criminal sex offenses.

The majority's statement of the facts is conveniently abbreviated; as a result, the total picture of the events which occurred in two judicial districts is not clear. For that reason, I restate at some length the facts of record which underlie the issues before this Court.

The State of Montana charged defendant and respondent George Burns (Burns) with Deviate Sexual Conduct and Deviate Sexual Conduct Without Consent in Beaverhead County Cause No. DC-91-2378. After Burns pled not guilty and furnished a list of character witnesses to the prosecution, the prosecution applied for an investigative subpoena duces tecum in the First Judicial District Court, asserting that the administration of justice required the issuance of the subpoena requiring the Catholic Diocese of Helena to produce its employee files on Burns. The application was

10

supported by an affidavit enumerating in detail the bases for the application.

The Honorable Dorothy McCarter issued the subpoena on September 23, 1991. In it, she found "that the administration of justice requires" the issuance of the subpoena; the subpoena went on to command the Chancellor of the Diocese to produce immediately all records of "employee files, employee records, disciplinary proceedings, [and] transfer records" regarding Burns. The secrecy and disclosure provisions relating to grand jury proceedings specifically were made applicable to the subpoena. Failure to comply with the subpoena "is punishable for contempt of court."

The Diocese orally moved Judge McCarter to quash the subpoena, arguing church canons pertaining to confidentiality of the documents sought. After discussion with the court, counsel for the Diocese agreed that the subpoena, pursuant to an active criminal investigation and attendant compelling state interest, would reach the documents held by the Diocese. Counsel also agreed that the files would be reviewed in camera by the trial court. The First Judicial District Court denied the motion to quash the subpoena on September 27, 1991, and ordered the in camera review by the presiding trial judge, the Honorable Tom Olson. (The Honorable Frank Davis had recused himself from the case.)

Between the time of Judge McCarter's order of September 23 issuing the subpoena and her subsequent order of September 27 denying the Diocese's motion to quash, the Diocese produced the files in Judge Olson's court on September 25. Notwithstanding its

11

agreement in the First Judicial District that the subpoena would reach the files because of the State's compelling interest, the Diocese asserted privacy rights regarding the records. The prosecution was not present. Judge Olson stated in advance that he would review the files "in a summary fashion." He set September 27 "for the County Attorney to present whatever argument and documents he may have concerning the personnel records."

Judge Olson reviewed the personnel file in the presence of the Chancellor of the Diocese. He stated on the record that the document was about one and one-half inches thick and that it was "marked confidential, to be opened by the Bishop of the Diocese only." He noted that it was clear that the State was seeking "other acts" evidence in the file. He opened the file "with reluctance" and reviewed it "in a summary fashion." He stated at that time that he considered the documents to be "highly personal documents, private documents of the Diocese." He went on to state that he would accord the State the September 27 hearing if the State pursued it. He pronounced his "impression" that the documents "will not be disclosed . . . But I guess I should not pre-judge that until the hearing has taken place. For appearances of fairness . . ." he went on to require the Chancellor's presence, with the documents, at the September 27 hearing.

The September 27 hearing took place as scheduled for the purpose of the State's motion "for release of the investigative subpoena information." The State recounted for the court the proceedings before Judge McCarter and asserted its compelling

12

interest in obtaining the information. Judge Olson ruled that the evidence sought was to be returned to the Diocese intact, without disclosure. He did so on the grounds that "the Diocese has compelling rights of privacy to its personnel files," but without providing any legal authority. He restated his original reluctance in reviewing the file and the fact of his summary review. He also noted the "separation of church and state in this country," a position not argued. He specifically found "that the State cannot show a compelling interest to crack open private church documents."

The State successfully moved for a stay of further proceedings and appealed Judge Olson's ruling to this Court.

The majority states the issue as whether the District Court abused its discretion in refusing to grant the State's motion to discover the Catholic Church's personnel records concerning a defendant in a criminal case after the District Court conducted an in camera review. The majority's refusal to even mention the fact that the First Judicial District Court, on the basis of compelling State interest, had already ordered the Diocese to immediately make the records available and denied the Diocese's motion to quash is an early warning signal of the almost offhand manner in which the majority approaches this case. It is my view that Judge Olson had no authority to totally and completely override Judge McCarter's finding of compelling State interest and, indeed, to conclude that the State "cannot" show a compelling State interest under the facts of this case; in addition, the court's failure to enter detailed findings or any legal authority whatsoever essentially renders

13

review by this Court impossible. The majority's willingness to put its imprimatur on the events and proceedings which occurred in this case is incomprehensible to me.

The majority begins its analysis with the _in camera_ issue and addresses the privacy issue thereafter. For ease of discussion, I will follow suit. To begin, I do not disagree with the majority's statements concerning the purpose and value of _in camera_ reviews. The cases on which it relies to affirm the actual _in camera_ proceedings which occurred in this case, however, are inapposite. If anything, those cases support a remand for further and appropriate proceedings by the district court.

The majority relies primarily, and erroneously, on _State v. Mix_ and _In re Lacy_ to support its affirmance of the _in camera_ proceedings which occurred in the instant case. In _Mix_, the trial court reviewed a homicide victim's medical records _in camera_ after the defendant requested admissibility of the records to show the victim's unstable personality and violent and turbulent character. Ruling that the records would be excluded, the court "carefully detailed its findings [of remoteness and irrelevance] with counsel;" it later included those "clearly detailed" findings of remoteness and irrelevance in its order denying a new trial. This Court found no manifest abuse of discretion. Thus, while _Mix_ can be said to involve _in camera_ proceedings, it certainly provides no basis for the majority's affirmance in this case. _Mix_ supports the necessity of a trial court making detailed findings of its reasons for excluding material after an _in camera_ review. In this case, no

14

findings of any kind were made. Absent such findings, and with the file at issue not available to us, there is absolutely nothing for this Court to review. Yet the majority blithely ignores the specifics of Mix, concluding that the District Court properly utilized the in camera procedure and that there was no abuse of discretion.

Lacy also provides no support for the majority's conclusions. The majority correctly states that in Lacy we determined that the in camera procedure should be used to decide what information properly could be discovered. Again, however, the majority does not focus on the specifics in Lacy and ignores its own analysis therein. The issue in Lacy was an insurer's right to obtain police department investigation records which the insurer believed would aid it in determining whether a decedent made misrepresentations in his policy application. The insurer filed an application for production; the police department objected to a general release of the information and requested an in camera review to decide which evidence should be released. The district court denied the application altogether on the basis that the carrier was not entitled to the information under the Criminal Justice Information Act; the carrier appealed. We concluded that the insurer had met its burden of showing eligibility to receive confidential police information under the Right to Know provision of the Montana Constitution, subject only to the privacy rights of those named in the records. We remanded for an in camera review by the district court to determine what material could be released, noting that the

15

insurer "should be accorded the widest breadth of information possible."

Analyzing the facts, procedure and law set forth in Lacy, it is clear that in this case the State met its initial burden of showing entitlement to the file at issue in its application for the subpoena; Judge McCarter so ruled in issuing the subpoena commanding production. The appropriate procedure thereafter would have been an in camera review to determine the extent to which the information should be released. Here, the Diocese had made a motion to quash on confidentiality grounds and subsequently agreed that the State's overriding interest controlled. Judge McCarter denied the motion to quash. As a result, all confidentiality bases for nondisclosure should have been rejected by Judge Olson. The file should have been disclosed to the State subject only to relevance determinations and to the grand jury secrecy and disclosure provisions previously made applicable by Judge McCarter.

In the event that it was in any way appropriate for the District Court to consider the privacy right asserted, it should have done so mindful of the State's entitlement to "the widest breadth of information possible," according to Lacy. In ruling on the privacy right, it should have done a legal analysis delineating the extent to which the right existed under these circumstances. Next, under Lacy, it should have balanced the competing interests, disclosing as much information as possible to the State. Finally, it should have made detailed findings, as required by Mix, so that this Court would have something to review.

16

Instead, the District Court obviously was extremely reluctant even to open the file. Why? Because it was marked "confidential" and "private." The total irrelevance of such designations to a legal analysis of an asserted right to privacy can hardly be overstated. Barely overcoming its reluctance, the District Court reviewed the file "in summary fashion" and concluded, without any legal analysis whatsoever, that the file was a private, personal document of the Diocese. And all of this not only outside the presence of the prosecutor, but before he had had a chance to be heard. This is the in camera procedure the majority concludes was properly utilized in this case.

Finally, I am dismayed at the majority's analysis of the privacy issue itself. The majority glosses over the fact that in this case it is the Diocese which is held to have the right of privacy. It states that the two-prong privacy test was met during the proceedings before Judge Olson and that that test bars discovery of the records at issue here, relying on Missoulian v. Board of Regents. It is a sad day for the state of the law in Montana when this Court cannot distinguish between a case in which the competing interests are the public's right to know and an individual's expectation of privacy in personnel evaluations, and one in which the interests are the State's compelling interest in investigation and prosecutions of criminal sex offenses and the Helena Diocese's interest in keeping its files safe from scrutiny.

The majority concludes its discussion of the privacy issue by suggesting that its actions and those of the District Court in this

17

case should not be interpreted as blanket unavailability of personnel records. Given the state of the record before us, this statement is disingenuous at best. Perhaps the majority means to limit application of this case to other cases involving the Catholic Church and apply the law properly to all other employers. If so, an insupportable thing has happened in Montana: the Catholic Church has been placed both above and outside the reach of the law with regard to the investigation and prosecution of the very criminal offenses which people of values and morality find so disturbing. If not, the majority provides no analysis of how it plans to distinguish this case from one involving any other employer.

Yet, in this final section, the majority comes closest to admitting what the law requires it to do in this case. The majority discusses <u>Montana Human Rights Division v. Billings</u> and <u>Great Falls Tribune v. Cascade County Sheriff</u> with approval, suggesting that in other cases, presumably cases not involving the Church, it will apply those precedents. In <u>Billings</u>, access to employment records was granted to the Human Rights Division to investigate possible violations of anti-discrimination laws; protective measures were mandated to prevent dissemination of the discovered information. Those results were appropriate in <u>Billings</u> and they are appropriate here. Apparently the majority believes it is more important and, somehow, more legally permissible to discover violations of anti-discrimination laws than to discover and prosecute criminal acts of deviate sexual conduct. I am

18

unwilling to subscribe to such an ordering of priorities. Billings makes it even more clear to me that the State's interest in this case must override any right to privacy asserted by an entity-- whether that entity is the City of Billings, XYZ Corporation or the Helena Diocese. Adequate protective measures are available in this case as they were in Billings; indeed, here Judge McCarter included protective measures in the subpoena when it was issued.

In Great Falls Tribune, the public's right to know which officers had been disciplined for unlawful acts was held to override the limited privacy interest of those officers. I can conceive of no explanation, nor is one offered, for the majority's conclusion in this case that the State's interest in prosecuting sex offense cases and, indeed, in protecting Montanans from perpetrators of such offenses, must give way to the privacy interests of the Helena Diocese of the Roman Catholic Church.

In its final paragraph, the majority performs its last reconstruction of the record in this case to match the result it is determined to reach. Contrary to the majority's statement, the District Court did not order the in camera review as a result of "consider[ing] the possible effects of releasing the Catholic Diocese's personnel records concerning Burns. . . . " Judge McCarter ordered the Church to immediately produce the files after finding that the State had a compelling interest, denied the Church's motion to quash, and ordered an in camera review. The record does not suggest why the in camera review was ordered and the majority's statement constitutes creative speculation. If we

19

are to base our opinions on speculation, I submit that it is more likely that the review was ordered so that irrelevant and/or remote information could be withheld, based on specific findings as required by Mix.

The majority's next statement, that the District Court heard arguments after the review and determined that disclosure of the information was improper, is true but misleading. The facts that the review was made and a decision announced two days before the prosecution even appeared and was allowed to make argument are conveniently omitted.

Finally, the majority tosses in a non sequitur by mentioning that prohibiting discovery information which is not probative is one of the discretionary functions of trial courts. The record is clear that no review was conducted from a probity perspective and no findings regarding probity were made in this case; indeed, neither this Court nor anyone other than the Church and Judge Olson will ever know whether information probative of the offenses with which Burns is charged is contained in the files.

Law enforcement personnel will be severely hampered by this Court's action today. More important, at least to me, Montanans will suffer. I dissent.

_____
Justice

20

April 17, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Hon. Marc Racicot, Attorney General
Elizabeth L. Griffing, Assistant
Justice Bldg.
Helena, MT 59620

Thomas R. Scott
County Attorney
2 So. Pacific St., CL No. 2
Dillon, MT 59725

John S. Warren
Schulz, Davis & Warren
P.O. Box 28
Dillon, MT 59725

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy