JUSTICE HARRISON
delivered the Opinion of the Court.
This is an interlocutory appeal from an order of the Fifth Judicial District Court, Beaverhead County, Montana, denying the appellant’s request to compel discovery of the respondent’s personnel files from the Catholic Diocese. We affirm.
The issue on appeal is whether the District Court abused its discretion in refusing to grant the State’s motion to discover the Catholic Diocese’s personnel records concerning the respondent in a criminal case after the District Court conducted an in camera inspection.
Defendant and respondent, George Bums (Bums) was charged with Deviate Sexual Conduct under § 45-5-505(1), MCA (1989), and Deviate Sexual Conduct Without Consent under § 45-5-505(3), MCA (1989). Burns pled not guilty and later presented the prosecution with a list of approximately fifteen character witnesses. The prosecution applied for an investigative subpoena to obtain Bums’ personnel records from the Catholic Diocese in Helena. The State purportedly sought information regarding reports of similar instances of misconduct, disciplinary actions, transfer records, as well as witness names to use in rebutting and cross-examining Burns’ character witnesses. The Honorable Dorothy McCarter issued the subpoená which was served on Father John Robertson (Robertson), Chancellor of the Catholic Diocese of Helena. On the advice of counsel, Robertson refused to surrender the personnel records. Judge McCarter’s order dated September 27,1991, indicated that the parties agreed to an in camera review of the records in question on September 23, 1991. Accordingly, Judge McCarter ordered the in camera inspection by the presiding trial judge, the Honorable Thomas A. Olson. [1]
*39 Several telephone conferences ensued between Judge Olson and the parties. Due to the dispute over whether to reveal the contents of the personnel records maintained by the Catholic Diocese, the District Court conducted an in camera inspection of Burns’ personnel file on September 25, 1991. After hearing oral arguments, Judge Olson ruled that the information was not discoverable since it contained personal and private information and returned the records to the Diocese of the Catholic Church in Helena.
The State initiates this interlocutory appeal alleging that Judge Olson erred in barring discovery of the records. The State maintains that unfair prejudice attaches because the file could contain reports of other similar related acts and relevant disciplinary proceedings against Burns which would qualify as other crimes, wrongs or acts evidence. Further, the State alleges that lack of access to Bums’ personnel records is prejudicial since they may contain the names of witnesses who can rebut Bums’ character witnesses.
An in camera review is a device often used at various stages throughout discovery and trial. The purpose of the proceeding is to balance the privacy interests of the parties and the need to know. The in camera procedure can effectively offer protection to both parties by avoiding needless exposure of potentially harmful information. In State v. Thiel (1989), 236 Mont. 63, 768 P.2d 343, the in camera procedure was used to determine whether the contents of a social worker’s file should remain private. We determined that the in camera procedure protected privacy rights. Thiel, 236 Mont. at 67-68, 768 P.2d at 345-46. In State v. Mix (1989), 239 Mont. 351, 781 P.2d 751, the in camera device was used to preview potentially damaging information before it was released. In Mix, medical records were sought for proof of character evidence. The trial court refused the request for access to the medical records after an in camera inspection on the grounds that the subject matter was irrelevant and too remote to the case. Mix, 239 Mont. at 360, 781 P.2d at 756. In In re Lacy (1989), 239 Mont. 321, 780 P.2d 186, we determined that the in camera procedure should be used to decide what information could be properly discovered. Lacy, 239 Mont. at 326, 780 P.2d at 189.
Accordingly, we conclude in the case at bar, that the District Court properly utilized the in camera procedure to weigh the effects of allowing discovery of the information contained in Burns’ personnel files maintained by the Catholic Diocese.
While discovery is meant to be a broad tool in facilitating the resolution of lawsuits, it is not without restraint.
*40 The ability to question adverse witnesses, however does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Pennsylvania v. Ritchie (1987), 408 U.S. 39, 53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40, 54.
State v. Reynolds (1990), 243 Mont. 1, 8, 792 P.2d 1111, 1115.
The scope of discovery in criminal matters has been addressed by the American Bar Association as follows:
In order to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protection of persons, effective law enforcement, the adversary system, and national security.
ABA Discovery and Procedure Before Trial, § 1.2 (1974).
When discovery of documents such as personnel records are at issue, privacy rights are -undoubtedly at stake. Montana adheres to one of the most stringent protection of its citizens’ right to privacy in the country. Mont. Const. Art. II, § 10. Montana’s treatment of privacy rights is more strict than that offered by the Federal Constitution. Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 439, 649 P.2d 1283, 1286. It is against this constitutional backdrop that we view the case at bar.
The privacy interest in Burns’ personnel records at the Catholic Diocese must be weighed against the State’s need to discover the same. On appeal we seek to review whether the District Court adequately weighed and balanced these competing interests. On September 25,1991, during an on the record, in camera review of the contents of Bums’ personnel records, Judge Olson said:
I find a document that is marked confidential, to be opened by the Bishop of the Diocese only. I open this with reluctance. All right. The Court has in summary fashion reviewed the documents. I will say on the record, I consider these to be highly personal documents, private documents of the Diocese. I will accord the State and the defendant the hearing if the State pursues that. And my impression here, which I state to the representative of the Diocese, that these documents will not be disclosed.
On September 27, 1991, after hearing oral arguments Judge Olson stated:
The Court has heard the arguments of counsel and I make the following ruling. The evidence seized by the investigative sub *41 poena, or which is the subject of the investigative subpoena, is hereby returned to the Diocese of Helena intact, without disclosure to the State or the defendant. I do that upon the grounds that the Diocese has compelling rights of privacy to its personnel files and all of the documents contained therein. The file is clearly marked to be private .... We have the strongest privacy laws in this state of all of the states, and I find that the State cannot show compelling interest to crack open private church documents such as these. So, they are suppressed — returned to the Diocese — found to be off limits in this particular matter.
In Montana, we have adopted a two-prong test to determine whether issues of privacy are protected under our Constitution as follows:
1) Whether the person involved had a subjective or actual expectation of privacy; and,
2) Whether society is willing to recognize that expectation as reasonable.
State ex rel. Great Falls Tribune Co. v. Eighth Judicial Dist. Court (1989), 238 Mont. 310, 318, 777 P.2d 345, 350, citing Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 441, 649 P.2d 1283, 1287.
This test was used in Missoulian v. Board of Regents (1984), 207 Mont. 513, 675 P.2d 962. In Missoulian v. Board of Regents, “the Board of Regents was required to balance the public’s right to know against the individual’s right of privacy with respect to employment evaluations. There the right of the individual privacy was held to be paramount.” Tribune, 238 Mont. at 319, 777 P.2d at 350.
While the two-prong test was not specifically set forth by Judge Olson, it is apparent from his comments in the record that the test is satisfied, barring discovery of Bums’ personnel records.
The case at bar is similar to Mix, in that the State seeks leads relating to character evidence, as well as information about prior acts of misconduct such as disciplinary proceedings. As in Mix, an in camera inspection was conducted to weigh the interests of the parties. The record indicates that Judge Olson reviewed the personnel records and concluded that the right to privacy outweighed the State’s need for any information contained in the records. Whether applying the two-prong test or the principles of Mix to the case at bar, we find that the District Court acted appropriately and did not abuse its discretion.
We note that Judge Olson’s final comment in the previous recita *42 tions on the record is particularly informative. He stated that the personnel records would be off limits “in this particular matter.” This is important since there is not blanket unavailability of personnel records nor should the outcome of this appeal point to that end. Personnel records may be discoverable given the correct set of circumstances and after appropriate balancing tests are considered which may include the in camera procedure previously discussed. For instance, in Montana Human Rights v. Billings, access to employment records was granted to the Human Rights Division to investigate possible violations of discrimination. However, when granting such access, we insisted on specific protective measures to prevent dissemination of the discovered information. Montana Human Rights v. Billings (1982), 199 Mont. 434, 446, 649 P.2d 1283, 1290. The right to know the names of disciplined employees was greater than their right to privacy in Great Falls Tribune v. Sheriff (1989), 238 Mont. 103, 775 P.2d 1267. In Tribune v. Sheriff we said:
When we balance the limited privacy interest of the law enforcement officers against the public’s right to know which officers have been disciplined for unlawful acts, we conclude that the District Court was correct. The privacy interest of the officers does not clearly exceed the public’s right to know. We note that we are not ruling that the entirety of any personnel files must be revealed.
Tribune v. Sheriff, 238 Mont. at 107, 775 P.2d at 1269.
We also mention that we fail to see how the State’s alleged prejudice is created particularly with regard to the discovery of rebuttable character witnesses. Certainly, the State may research and locate witnesses to rebut Burns’ character bolstering witnesses and while access to Bums’ personnel records maintained by the Catholic Diocese may or may not expedite this process, the file is not the only means of locating these witnesses.
Absent an abuse of discretion we will uphold the rulings of the district court. “District courts have the discretionary power to control discovery activities in cases pending before them. We will overturn a district court order affecting discovery only if it amounts to an abuse of discretion.” State of Or. ex rel. Worden v. Drinkwalter (1985), 216 Mont. 9, 12, 700 P.2d 150, 152. In the case at bar, the District Court considered the possible effects of releasing the Catholic Diocese’s personnel records concerning Bums and consequently, ordered an in camera review of the file for relevant information. After the in camera review the District Court heard arguments regarding exposing the contents of the file and determined that such exposure was improper. *43 Prohibiting discovery of materials that are not probative is one of the functions of trial judges which is within their discretionary powers. In the case at bar, Judge Olson properly utilized his discretionary powers to prohibit discovery of Burns’ personnel records. The competing interests of the parties were properly weighed by the District Court.
We affirm.
CHIEF JUSTICE TURNAGE and JUSTICES HUNT, McDONOUGH, WEBER and TRIEWEILER concur.

 Judge Olson took over the case after the presiding District Judge, the Honorable Frank M. Davis from Dillon recused himself.