No. 80-412

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

THOMAS DALE ROBERTS,

Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula, The Honorable
Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Hood & Sherwood, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert L. Deschamps, County Attorney, Missoula,
Montana

---

Submitted on Briefs: June 24, 1981

Decided: September 15, 1981

Filed: SEP 15 1981

*Thomas J. Kearney*

---
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant Thomas Dale Roberts was convicted of burglary following a jury trial in the District Court of Missoula County. Judgment was entered thereon sentencing him to five years imprisonment with two years suspended. Defendant appeals from the judgment and sentence.

On September 29, 1979, defendant and his ex-wife Carol were traveling in defendant's green Buick station wagon from Dillon, Montana to Coeur D'Alene, Idaho, where they intended to be remarried. They stopped in Butte where they picked up Harold Nixon, Carol's stepfather, and two juveniles--Dale Chelini, defendant's nephew, and Dennis O'Donnell, Chelini's friend. They proceeded to Missoula where they stopped at the residence of Edrie Boulter who was a girl friend of Chelini and the daughter of Robert Boulter, part owner of the Snake Eyes Store in Lolo. Chelini and O'Donnell got out of the car and talked to Edrie for approximately half an hour. They then rejoined the three adults in the car and the five of them drove to the Lolo Tavern which is located near the Snake Eyes Store in Lolo. According to defendant's testimony, the occupants of the car had been drinking substantial amounts of beer and Snap-E-Tom tomato cocktail during the trip.

The five of them continued drinking in the Lolo Tavern far into the night. According to defendant, he and Carol got into an argument in the Tavern, he got mad and he went to the car. Carol followed him to the car where the argument continued. Defendant testified he "grabbed up all of the stuff" in the car, left the car and walked toward the highway intending to hitchhike to Butte. He stated he was unsuccessful in hitchhiking, got cold and began to walk back to the tavern located near the Snake Eyes Store.

About 2:00 a.m. Deputy Sheriff Newlon who was then in the

area received a dispatcher's call about a possible burglary of a small grocery store. The report also described a suspect green station wagon. Deputy Newlon noticed a green station wagon outside the Lolo Tavern and upon investigation learned that the registered owner was Thomas Dale Roberts. Deputy Newlon testified he observed someone in the garage portion of the building in which the Snake Eyes store is located. The officer went to investigate, heard someone behind the store, and apprehended defendant who fit the general description of the person the officer had seen in the garage. Roberts was found to be carrying two three-packs of Snap-E-Tom tomato cocktail, 16 packs of cigarettes of five different brands, two magazines, and a can of lighter fluid, all stuffed inside his shirt. Roberts was arrested and charged with burglary.

Investigation revealed that the front door of the store was unlocked and there were no signs of forced entry into the store or garage. Numerous items from the shelves and cooler were scattered on the floor including cases of beer and packs of Snap-E-Tom tomato cocktail. Robert Boulter, part-owner of the store, testified that the grease pencil price markings on the Snap-E-Tom tomato cocktails in the store appeared to be the same as those found in defendant's possession, but that the other items could not be identified as coming from his store as they were either prepriced when they came to the store or had no price markings on them. Boulter testified that all items found in defendant's possession were sold in his store. He further testified that his daughter, Edrie, had a key to the store.

Defendant testified that he was married to Carol at the time of trial. Over defendant's objection, Carol was called as a prosecution witness at his trial and was permitted to testify concerning her observations of defendant's actions on the night in question. The trial court did not allow her to testify concerning any communications made to her by the defendant.

On appeal, defendant contends (1) that the District Court erred in allowing his wife to testify over his objection, and (2) there was insufficient evidence to support his conviction of burglary.

The admissibility of a spouse's testimony in Montana is governed by two separate statutes. Section 46-16-212, MCA provides:

> "Except with the consent of both or in cases of criminal violence by one upon the other, abandonment or neglect of children by either party, or abandonment or neglect of one by the other, neither spouse is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties." (Emphasis added.)

Section 26-1-802, MCA, hereafter identified as the marital privilege statute, provides:

> "A husband cannot be examined for or against his wife without her consent or a wife for or against her husband without his consent; nor can either, during the marriage or afterward, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other or to a criminal action or proceeding for a crime committed by one against the other."

In a criminal case that does not involve violence or abandonment or neglect of spouse or children and where the parties are married at the time of trial, the applicable statute is section 46-16-212. State v. Taylor (1973), 163 Mont. 106, 515 P.2d 695. Both parties agree. However, the State argues that this statute does not impose a blanket exclusion of the spouse as a witness, but rather excludes only the spouse's testimony as to communications made by the defendant to his spouse during the marriage. The trial court agreed with the State's theory and permitted Carol to testify but excluded any testimony concerning communications between defendant and Carol. This was error.

Both the language of the statute and Montana case law establish the contrary. The express language of section 46-16-212, MCA, indicates that a wife is not a competent witness

- 4 -

against her husband without his consent in a criminal proceeding against him (subject to exceptions not relevant to this case). "Except with the consent of both . . . neither spouse is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties." Section 46-16-212, MCA. (Emphasis added.) Where the language of a statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe. Dunphy v. Anaconda Company (1968), 151 Mont. 76, 438 P.2d 660 and cases cited therein. The function of the court in such cases is simply to ascertain and declare what in terms or in substance is contained in the statute and not to insert what has been omitted or to omit what has been inserted. Section 1-2-101, MCA. A person who is not a competent witness cannot testify at all.

Montana case law compels the same result. State v. Storm (1950), 124 Mont. 102, 220 P.2d 674. There we applied the predecessor to section 46-16-212, MCA, to reverse defendant's conviction of assault where defendant's wife was permitted to testify over her husband's objection that in pointing a loaded gun at the sheriff, he was resisting arrest. There, as here, the predecessor statute expressly dealt with the competency of a husband and wife as a witness against the other in a criminal proceeding.

The State contends that Storm is inconsistent with State v. Dixson (1927), 80 Mont. 181, 260 P. 138, and State v. Houchin (1967), 149 Mont. 503, 428 P.2d 971. We find no inconsistency in these decisions. Dixson involved a criminal prosecution where the marriage of defendant and the witness had been annulled prior to trial and accordingly the predecessor of section 26-1-802, MCA, the marital privilege statute, was applied rather than the predecessor of the statute involved in this case. The statute in Dixson differed significantly from the statute applicable in this case. Accordingly, that decision is not germane to the situation presented in this case.

Houchin is inapposite. It also involved the predecessor

of section 26-1-802, MCA, the marital privilege statute, which serves to protect confidential communications between spouses during marriage. In Houchin since the defendant's wife was not called as a witness, the marital privilege statute did not prohibit a deputy sheriff's testimony that defendant's wife pointed out the location of stolen copper wire.

Thus there are two distinct spousal privileges which may apply in a criminal proceeding. If the defendant is married at the time of trial, the spouse is incompetent to testify either for or against the defendant without his consent subject to the statutory exceptions. Section 46-16-212, MCA. If defendant is not married at the time of trial, his former spouse is competent to testify but cannot be examined without his consent as to any communication made between the spouses during the marriage. Section 26-1-802, MCA.

The State criticizes the sweeping marital privilege of section 46-16-212, MCA, which permits the defendant to prevent his spouse from taking the witness stand. We note the current trend in other states and in the federal courts toward erosion of the marital privilege. Trammel v. United States (1980), 445 U.S. 40, 100 S.Ct. 906, ____ L.Ed.2d ____. The United States Supreme Court in Trammel modified the common law marital privilege so that the spousal witness alone may exercise the privilege to refuse to testify adversely and may neither be compelled nor foreclosed from testifying in federal court. The Court reasoned:

> "The contemporary justification for affording an accused [the privilege to exclude all adverse spousal testimony] is also unpersuasive. When one spouse is willing to testify against the other in a criminal proceeding--whatever the motivation--their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve. In these circumstances, a rule of evidence that permits an accused to prevent adverse spousal testimony seems far more likely to frustrate justice than to foster family peace." (Bracketed material paraphrased.) Trammel, supra, 445 U.S. at 52, 100 S.Ct. at 913.

- 6 -

Whatever merit this view may possess, it applies only in the federal courts and is contrary to the statutory law of Montana. Our duty is to construe the law as we find it. Dunphy v. Anaconda Company, supra, and cases cited therein. Absent constitutional or statutory infirmities, this Court is not empowered to change the statutory law of this state.

However, we hold that the error in permitting Carol to testify is harmless error under the circumstances of the case. Montana law provides that no cause shall be reversed by reason of any error committed by the trial court unless the record shows that the error was prejudicial (section 46-20-701, MCA) and that any error which does not affect substantial rights shall be disregarded. (Section 46-20-702, MCA.)

The federal constitutional test of harmless error is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. Fahy v. Connecticut (1963), 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171. Or stated another way, can we as a reviewing court declare a belief that the error was harmless beyond a reasonable doubt? Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. Under either the Montana test or the federal constitutional test, the error in permitting Carol to testify is harmless.

Here Carol's testimony was essentially identical to the defendant's. Her testimony did not contradict or vary defendant's own testimony in any material respect. The defendant himself agreed with her testimony:

"Q. Is there anything substantively or materially different as you remember it from what Carol remembers and testified to? A. No."

Under such circumstances the error was clearly not prejudicial to defendant, did not affect any substantial right of defendant, and there is no reasonable possibility that Carol's testimony could have contributed to defendant's conviction.

Defendant also contends there was insufficient evidence to support his conviction of burglary. A person commits burglary if he knowingly enters or remains in an occupied structure with the purpose of committing an offense therein. Section 45-6-204, MCA. Here the evidence concerning entry into the store by defendant is circumstantial, but it is sufficient to enable the jury to reasonably infer the elements of the crime. The front door of the store was unlocked; defendant was apprehended behind the store shortly after 2:00 a.m.; he had in his possession various articles of merchandise sold in the store; and a person was observed in the garage portion of the store building shortly before defendant's apprehension and arrest whose general description matched defendant's. Evidence that the merchandise found in defendant's possession came from the store rather than from defendant's car is found in the testimony of Robert Boulter that the grease pencil price marking on the Snap-E-Tom tomato cocktails appeared to be the same as those in the store; the fact that five packs of Camel filter cigarettes were found among the merchandise stuffed in defendant's shirt and none of the five persons traveling in his car smoked that brand; and the implausibility of defendant's explanation of his possession of the articles. This is substantial evidence supporting the crime of burglary.

The issue of sufficiency of the evidence boiled down to the credibility of the State's witnesses vis-a-vis the defendant's testimony. The jury by its verdict resolved this conflict in favor of the State.

Defendant argues that the quality of the State's evidence is insufficient to meet the standard of sufficiency in Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. We disagree.

Jackson states the required standard in this language:

" . . . the relevant question is whether, after viewing the evidence in the light most favorable

to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, supra, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.

We find that the evidence meets this standard. Although the defendant argues that the testimony of the officers concerning his observation of a person in the garage portion of the store building shortly before defendant's apprehension is unworthy of belief and that missing tools from the garage were never recovered, these contentions in no way prevent any rational juror from concluding that defendant unlawfully entered the Snake Eyes Store with the intent of committing theft therein.

Affirmed.

_____
Chief Justice


We concur:

_____

_____

_____

_____
Justices

- 9 -