DA 09-0484

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 204

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

DUANE RONALD BELANUS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 2008-309
Honorable Jeffrey Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Palmer A. Hoovestal, Hoovestal Law Firm, PLLC, Helena, Montana

      For Appellee:

            Steve Bullock, Montana Attorney General, John Paulson, Assistant
Attorney General, Helena, Montana

            Leo J. Gallagher, Lewis and Clark County Attorney, Melissa Broch,
Deputy County Attorney, Helena, Montana

Submitted on Briefs:  July 14, 2010

Decided:  September 21, 2010

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Duane R. Belanus was convicted in the First Judicial District Court, Lewis and Clark County, of sexual intercourse without consent involving the infliction of bodily injury, aggravated kidnapping, burglary, tampering with or fabricating physical evidence, and misdemeanor theft.  He appeals, raising two issues which we restate as follows:

1. Was Belanus' right to defend against the charges infringed by application of § 45-2-203, MCA, which disallows consideration of voluntary intoxication in relation to a defendant's state of mind?

2. Did the District Court abuse its discretion in allowing an audio recording of a telephone call between Belanus and the victim to be played to the jury?

We affirm.

## BACKGROUND

¶2    Belanus' brief on appeal opens with an expletive-laden quote from former boxer Mike Tyson in the 2009 film *The Hangover*—a peculiar choice for this case, given Tyson's conviction for raping an 18-year-old girl in Indiana in 1992, where his defense (like Belanus' here) was that the sex was consensual.  The not-so-subtle point of this Tyson quote is that people should be forgiven for outrageous acts committed while extremely intoxicated, since "we all do dumb [stuff] when we're [messed] up"—another defense which Belanus asserted at trial and which he now, for whatever reason, believes this Court should bear in mind as we consider the legal issues raised in this appeal.[1]

_____

[1] Indeed, Belanus reiterates the point in the concluding paragraph of his brief, which opens with a quote attributed to Mel Gibson in an October 12, 2006 interview with

¶3 Belanus' brief then weaves a sordid tale replete with lurid descriptions of a night of heavy drinking and drug use, physical assaults against his then-girlfriend (whom we refer to herein as "T.C."), violent sex with her in his home, and then efforts the next morning to cover up his activities the night before. Belanus' storytelling is needlessly graphic and offensive. And yet, at the same time, he belittles T.C. and trivializes his conduct as consensual and just the sort of "dumb [stuff]" that people do when they're drunk. That supposedly excusable conduct included chasing T.C. when she tried to escape from Belanus during their drive to his house, dragging her back to his car by her hair, and hitting and kicking her in a fit of rage. It also included choking T.C. to the point she could not breathe and urinated in her pants, and then handcuffing and raping her by violently shoving an "anal wand" into her repeatedly, which caused her to scream in pain and defecate and bleed on the floor, all while calling her a "slut" and a "stupid bitch" and telling her she deserved it. Appellate counsel's attempts to sugarcoat these shocking events as just one of Belanus and T.C.'s typical date nights that went "horribly awry" gives pulp fiction a bad name. His story is as delusional as it is unbelievable, and it is not surprising that the jury didn't buy it.

¶4 The relevant facts of this case, as they relate to the legal issues raised on appeal, are fairly straightforward and do not require any further detailing of the events underlying the offenses. The State charged Belanus with kidnapping T.C., raping her, inflicting

---

Diane Sawyer: "Alcohol loosens your tongue, and makes you act, speak, and behave in a way that is not you." Belanus then recounts the effects that alcohol consumption can have on people, observing that it can lead to "unwanted behaviors" and has "caused many people to do and say things that they later sorely regret." He notes that "Mike Tyson was aware of this in *The Hangover* and was able to forgive."

bodily injury upon her in the course of the rape, unlawfully tampering with physical evidence of the rape, burglarizing T.C.'s residence, and committing a theft therein. These offenses occurred on or about August 3, 2008. Prior to trial, Belanus filed a motion in limine asking the court to allow him to present evidence of his intoxication at the time of the offenses. Essentially, he sought to defend on the ground that due to his intoxication, he did not possess the requisite mental states for committing the offenses.[2] The District Court denied his motion based on § 45-2-203, MCA (2007), which states: "A person who is in an intoxicated condition is criminally responsible for his conduct and an intoxicated condition is not a defense to any offense and may not be taken into consideration in determining the existence of a mental state which is an element of the offense . . . ."

¶5   Belanus now appeals the court's ruling, arguing that § 45-2-203, MCA, infringes his rights under Article II, Sections 3 and 24 of the Montana Constitution. In addition, he appeals the court's decision to allow the jury to hear an audio recording of a telephone call Belanus made to T.C. roughly five weeks before the events at issue.

**DISCUSSION**

---

[2] *See* § 45-5-503(1), MCA ("A person who *knowingly* has sexual intercourse without consent with another person commits the offense of sexual intercourse without consent." (emphasis added)); § 45-5-303(1), MCA ("A person commits the offense of aggravated kidnapping if the person *knowingly or purposely* and without lawful authority restrains another person . . . ." (emphasis added)); § 45-6-204(1), MCA ("A person commits the offense of burglary if he *knowingly* enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein." (emphasis added)); § 45-6-301(1)(c), MCA ("A person commits the offense of theft when the person *purposely or knowingly* obtains or exerts unauthorized control over property of the owner and uses, conceals, or abandons the property *knowing* that the use, concealment, or abandonment probably will deprive the owner of the property." (emphases added)).

4

**Issue 1.**

¶6 The first issue is whether Belanus' right to defend against the charges was infringed by application of § 45-2-203, MCA. We answer this question in the negative, though we do not reach the merits of Belanus' constitutional challenge.

¶7 In *State v. Egelhoff*, 272 Mont. 114, 900 P.2d 260 (1995), this Court held that the defendant in that case was denied due process under the United States Constitution when the jury was instructed that voluntary intoxication may not be taken into consideration in determining the existence of a mental state which is an element of the offense. The Supreme Court reversed and held that § 45-2-203, MCA, does not violate the Fourteenth Amendment's Due Process Clause. *Montana v. Egelhoff*, 518 U.S. 37, 116 S. Ct. 2013 (1996). In *State v. McCaslin*, 2004 MT 212, 322 Mont. 350, 96 P.3d 722, we considered a challenge under Montana's Due Process Clause (Article II, Section 17) to a jury instruction that was modeled on § 45-2-203, MCA. Based on the arguments made, we rejected that challenge and upheld the statute.

¶8 Belanus now raises a challenge to § 45-2-203, MCA, under Article II, Sections 3 and 24. The former provides, in pertinent part, that all persons have certain inalienable rights, including the right of "defending their lives and liberties." Mont. Const. art. II, § 3. The latter provides, in pertinent part, that in all criminal prosecutions, the accused "shall have the right to . . . defend." Mont. Const. art. II, § 24. Belanus contends that § 45-2-203, MCA, violates his "fundamental right to defend" under these provisions, while the State asserts that any such right is coextensive with the right to present a defense guaranteed by Article II, Section 17. The State goes on to argue that § 45-2-203,

MCA, is a reasonable restriction on the fact-finder's consideration of evidence, while Belanus argues that his right to defend includes the right to negate the State's proof relating to his mental state "by showing any state or condition that is adverse to the proper exercise of his mind—including voluntary intoxication." We need not resolve these issues, however, because Belanus' alleged right to present such evidence was not violated in any event.

¶9    First, notwithstanding the District Court's ruling on his motion in limine, Belanus ultimately introduced evidence of his intoxication on the evening of August 2 and the early morning of August 3, 2008. He testified that he consumed a significant amount of beer and a number of narcotics during that evening; that he was intoxicated before the assault and the allegedly consensual sex; and that he was still intoxicated the following morning. Hence, Belanus cannot be heard to complain that he was not allowed to present evidence of his intoxicated condition at the time the offenses were committed.

¶10    Second, Belanus' particular challenge to § 45-2-203, MCA, is premised on the notion that the jurors should have been allowed to consider his intoxicated condition in their deliberations. He specifically takes issue with the statutory language stating that an intoxicated condition "may not be taken into consideration in determining the existence of a mental state which is an element of the offense." Yet, the jurors in Belanus' case were not instructed that they could not take his intoxicated condition into consideration. In this regard, the State points out that *Egelhoff* and *McCaslin* concerned the propriety of giving an instruction based on § 45-2-203, MCA. In those cases, the court instructed the jury that voluntary intoxication could not be taken into consideration in determining the

6

existence of a mental state which is an element of the offense. But here, in contrast, no such instruction was given; and the jury, therefore, was allowed to consider and give whatever weight it wished to the evidence of Belanus' intoxication.

¶11 In short, Belanus presented the jury with evidence of his intoxication on the night in question, and the jury was not precluded from considering that evidence in deciding whether he acted "knowingly" or "purposely" in relation to the charged offenses. For these reasons, the rights that he contends are guaranteed by Article II, Sections 3 and 24 were not violated here.

## Issue 2.

¶12 The second issue is whether the District Court abused its discretion in allowing an audio recording of Belanus' telephone call to T.C. to be played to the jury. Evidently, he was drunk, made threats, used profanity, and ranted against T.C. during the call. Belanus objected to this evidence on the ground that it was highly prejudicial, but the District Court overruled his objection during an in-chambers conference. Thereafter, Belanus renewed his objection and requested that a *Just* instruction[3] be given at the time the jurors listened to the recording. The court gave the cautionary instruction.

¶13 Belanus' objection to the recording was based on Rule 403 of the Montana Rules of Evidence, which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or

---

[3] *See State v. Matt*, 249 Mont. 136, 142-43, 814 P.2d 52, 56 (1991); *see also* M. R. Evid. 105.

needless presentation of cumulative evidence." Given Belanus' specific argument under this rule, the issue before the District Court was whether the probative value of the audio recording was substantially outweighed by the danger of unfair prejudice.

¶14 In this regard, it must be emphasized here that Rule 403 does not allow relevant evidence to be excluded simply because it is prejudicial to the opponent. In a criminal prosecution, almost all evidence offered by the prosecution is going to be prejudicial to the defendant. *State v. Southern*, 1999 MT 94, ¶ 66, 294 Mont. 225, 980 P.2d 3. Indeed, that is why the evidence is offered: to prove that the defendant committed a criminal act. Thus, Rule 403 confers discretion on the trial judge to exclude relevant evidence which poses a danger of *unfair* prejudice—and, even then, only if that danger "substantially outweigh[s]" the evidence's probative value (i.e., its tendency to prove or disprove a fact of consequence). We have observed that the prejudicial effect of relevant evidence will substantially outweigh the probative value of the evidence when the evidence will prompt the jury to decide the case on an improper basis. *Southern*, ¶ 39.

¶15 We review a district court's ruling under Rule 403 for an abuse of discretion. *See e.g. State v. Pittman*, 2005 MT 70, ¶¶ 25-28, 326 Mont. 324, 109 P.3d 237. A court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811. The burden to demonstrate an abuse of discretion is on the party seeking reversal based on an unfavorable ruling. *State v. Sheehan*, 2005 MT 305, ¶ 18, 329 Mont. 417, 124 P.3d 1119.

¶16    Belanus has not met that burden here.  First, he does not deny that the audio recording was highly probative of his state of mind at the time of the incidents.  The evidence tended to show that his conduct toward T.C. on the night in question was consistent with his rant during their telephone conversation and that he acted knowingly or purposely in committing the charged offenses.  Second, while Belanus insists that the recording was inflammatory and prejudicial, he fails to explain how the evidence posed a danger of "unfair prejudice" or how this danger substantially outweighed the probative value of the evidence.  Notably, he did not contend in the District Court, and does not contend on appeal, that the evidence would prompt the jury to decide the case on an improper basis—e.g., on the ground that Belanus is a hothead with a propensity toward violence.

¶17    Belanus' argument, rather, is that it was inequitable and an abuse of discretion to allow the State to play the "drunken rant" to the jury as evidence of his intent, but not to allow him to "show[ ] any state or condition that was adverse to the proper exercise of his mind."  There are three problems with this argument.  First, Belanus cites no authority for the proposition that this alleged inequitable treatment by the District Court constitutes a "danger of unfair prejudice" under Rule 403.  Second, Belanus *was* allowed to show that he was in an intoxicated state or condition at the time of the incidents.  In fact, he told the jury that he was drunk and under the influence of narcotics at the time of the telephone call and during the night of August 2 and 3.  And, as noted, the jury was allowed to draw whatever inferences it wished regarding his intoxication.  Lastly, this inequity argument is not well-taken in any event, given that Belanus did not present it to the District Court

as a ground for his objection to the recording. *See State v. Gomez,* 2007 MT 111, ¶ 21, 337 Mont. 219, 158 P.3d 442 ("The rule is well established that this Court will not address an issue raised for the first time on appeal."); *but see State v. West,* 2008 MT 338, ¶¶ 19-20, 346 Mont. 244, 194 P.3d 683.

## CONCLUSION

¶18 Belanus' right to defend was not infringed by application of § 45-2-203, MCA, and he has failed to demonstrate that the District Court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason, resulting in substantial injustice, when it overruled his objection to the audio recording.

¶19 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS

10