Justice Dirk M. Sandefur delivered the Opinion of the Court.
***138 ¶1 Scott Reegan McCarthy appeals the judgment of the Montana Eighteenth Judicial District Court, Gallatin County, affirming the Bozeman Municipal Court's judgments of conviction on jury trial of misdemeanor Criminal Trespass, Assault (two counts), Resisting Arrest, and Obstructing a Peace Officer. We address the following restated issues on appeal:
1. Whether the Municipal Court erroneously subjected McCarthy's asserted "substantial need" for the arresting officers' personnel files under § 46-15-322(5), MCA, to balancing with their constitutional right to privacy?
2. Whether the Municipal Court erroneously excluded examining physician testimony regarding the nature and extent of injuries sustained by McCarthy incident to arrest?
3. Whether sufficient evidence existed to sustain McCarthy's conviction for obstructing a peace officer as defined by § 45-7-302, MCA ?
¶2 We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 While walking home after midnight on May 25, 2015, Bozeman ***139 residents Christopher and Kelsey Cundy observed a man, later identified as McCarthy, inside their pickup where they had left it parked on the street outside their home. As they continued to approach, they saw the man exit the pickup and attempt to get into their nearby parked car. At that point, Kelsey yelled at the man, causing him to run away with Kelsey in pursuit. Before Christopher caught up with them, McCarthy stopped, turned around, and struck Kelsey, scratching her chest with a pen. The man then again ran away with Kelsey in pursuit and Christopher still lagging behind. At some point, McCarthy stopped to confront Kelsey again. This time, however, Christopher had caught up, jumped between them, and briefly grappled with McCarthy before he broke free and ran out of sight. In response to Kelsey's 911 call, Bozeman police officers quickly arrived on scene in numbers and spoke with the couple.
¶4 After stepping away from police to see if anything was missing from their pickup, the couple saw McCarthy reappear, running past them toward the end of the street where it dead-ended at Bozeman Creek. Christopher pursued the man toward the creek while Kelsey alerted the police. As McCarthy went into the creek, Officer Lloyd caught up, drew his sidearm, and ordered McCarthy to *1053 stop and raise his hands. When McCarthy was slow to respond, Officer Lloyd threatened to shoot him if he did not comply. McCarthy then complied. After a second officer arrived at the creek and held McCarthy at bay at Taser-point, Lloyd approached and gripped McCarthy by an arm to cuff and arrest him.
¶5 Officer Lloyd testified at trial that McCarthy then tensed up and attempted to pull free. Lloyd testified that, as McCarthy continued to struggle to break free, he punched McCarthy several times in the midsection to terminate his resistance and force him to submit to arrest. Lloyd and McCarthy fell to the ground as the struggle continued, with McCarthy face-down, holding his hands in underneath his body. Lloyd testified that McCarthy continued to defiantly hold his hands in despite repeated commands to show his hands and unsuccessful attempts by Lloyd to physically pull his hands out to subdue and cuff him. Lloyd further testified that during the process, he again repeatedly punched McCarthy in the side in an attempt to force him to submit to arrest. Meanwhile, a third officer (Officer Chaffins) soon joined the fray and also repeatedly punched McCarthy to force him into submission. The officers' body cameras revealed the two officers on the ground struggling with McCarthy, punching and ***140 kneeing him, with another standing nearby.[1] The officers eventually subdued and arrested McCarthy and had him transported to the hospital by ambulance for medical care. Officer Lloyd subsequently cited McCarthy into the City of Bozeman Municipal Court on two counts of assault, criminal trespass to a motor vehicle, obstructing a peace officer, and resisting arrest-all misdemeanors in violation of Title 45, MCA.
¶6 In a contentious pretrial discovery process, the State ultimately provided a broad swath of investigative information compiled by the Bozeman Police Department regarding the incident. The State refused, however, to permit discovery of the requested internal police department use-of-force policy, related use-of-force reports and dispositions regarding the McCarthy incident, and the involved officers' pre-incident "personnel records."
¶7 On February 9, 2016, McCarthy filed a motion to compel discovery of the disputed information pursuant to § 46-15-322(1) and (5), MCA. Without further explanation, the motion cursorily asserted that the disputed items of information were relevant to the circumstances of McCarthy's arrest and his contemplated defense that he was physically unable to obstruct and resist his arrest as alleged. In opposition, the State asserted that the disputed items of information were outside the scope of discovery separately required by § 46-15-322(1), MCA (required scope of state disclosure in ordinary course), and the Due Process clause of the Fourteenth Amendment to the United States Constitution (exculpatory information and other constitutionally material information[2] ). Based on the "abundance" of incident-specific discovery already provided under §§ 46-15-322(1), 45-7-301(2), and -302(2), MCA (legality of arrest no defense to obstructing or resisting arrest), and the written representation of the deputy police chief that the disputed information was not Brady / Giglio information, the State asserted that McCarthy further failed to show "substantial need" for the disputed information under § 46-15-322(5), MCA (discovery information not otherwise provided for by § 46-15-322(1) - (2) ). In the contingent event that the court may nonetheless find that McCarthy had shown "substantial need" for the officers' incident-specific use-of-force ***141 reports/dispositions or related prior disciplinary histories, the State asserted that an in camera inspection would be necessary to balance McCarthy's asserted need with the officers' rights to individual privacy under Montana Constitution Article II, Section 10. Asserting that a showing of "substantial need" under § 46-15-322(5), MCA, precludes any consideration of the officers' privacy rights, McCarthy opposed the State's request for an in camera inspection. *1054 ¶8 Without conducting an in camera inspection, the Municipal Court compelled the State to provide discovery of the police department's use-of-force policy and related incident-specific use-of-force reports and dispositions regarding the officers. The court reasoned that:
all information ... pertaining to [McCarthy's] arrest is entirely within the purview of § 46-15-322(1), MCA, because it may constitute a "statement" by the officers whom the State may rely on at trial ... and most, if not all, of the information could mitigate or negate [his] guilt or may reduce his potential sentence ... because it would provide additional details pertaining to the basis of the criminal charges against [him].
(Emphasis added.) However, without reference to Brady / Giglio standards, the court denied McCarthy's request for discovery of the officers' prior personnel records, concluding that:
employment records are subject to the right to privacy set forth in [ ] Article II, Section 10 of the Montana Constitution ... [and that i]n balancing the Defendant's right to know with [the officers'] right to privacy in their respective personnel records, [the officers'] demand for privacy exceeds the merits of disclosure to the Defendant in this instance. [McCarthy] has not shown substantial need for the personnel records.
(Emphasis added.)
¶9 In a separate pretrial matter, the State filed a motion in limine pursuant to M. R. Evid. 402 - 03 to preclude McCarthy from presenting examining physician testimony regarding the nature and extent of injuries he sustained incident to the arrest (five fractured ribs and a partially collapsed lung). The State conceded that information describing "the sequence of events" regarding McCarthy's "arrest or actions by those involved" was generally "relevant" to the charged offenses but asserted that any "medical information collected thereafter does not have any tendency to make the existence of any fact that is [of] consequence" to the charged offenses "more or less probable...." McCarthy contrarily asserted that the nature and extent of his injuries tended to prove that he was in fact physically unable to resist and obstruct the arrest as alleged. The Municipal Court reserved ***142 judgment pending consideration in the context of the actual trial evidence.
¶10 At trial, McCarthy made an offer of proof that the proffered testimony of the physician who examined him the next day was relevant to show the amount of force, i.e., excessive force, used by the arresting officers. The State reasserted its prior objections pursuant to M. R. Evid. 402 - 03. Noting that the physician did not examine McCarthy until the next day and that Officer Lloyd had already testified regarding his injuries, the Municipal Court rejected the offer of proof and excluded the proffered physician testimony. After a two-day trial, the jury found McCarthy guilty on all counts as charged. He appealed to the Montana Eighteenth Judicial District Court. The District Court affirmed. McCarthy timely appeals to this Court.
STANDARD OF REVIEW
¶11 On appeal from municipal courts of record, district courts functions as intermediate courts of appeal with the scope of review limited to "the record and questions of law. ..." Sections 3-6-110(1), 3-5-303, MCA. On appeal of a judgment of an intermediate court of appeal, we review the record independent of the district court as if the matter was originally appealed directly to this Court. Stanley v. Lemire , 2006 MT 304, ¶¶ 25-26, 334 Mont. 489, 148 P.3d 643.
¶12 We review evidentiary rulings and rulings on discovery motions for an abuse of discretion. State v. Spottedbear , 2016 MT 243, ¶ 9, 385 Mont. 68, 380 P.3d 810 ; Billings v. Peterson , 2004 MT 232, ¶ 13, 322 Mont. 444, 97 P.3d 532. A lower court abuses its discretion if it exercises granted discretion based on a mistake of law, erroneous finding of material fact, or otherwise acts arbitrarily, without conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice. State v. Mills , 2018 MT 254, ¶ 12, 393 Mont. 121, 428 P.3d 834. A challenge of the sufficiency of the evidence to sustain a conviction is a question *1055 of law reviewed de novo. State v. Colburn , 2016 MT 246, ¶ 7, 385 Mont. 100, 386 P.3d 561. The standard of review for challenges to the sufficiency of the evidence is whether, when viewed in the light most favorable to the prosecution, sufficient record evidence exists upon which the trier of fact could have rationally found all essential elements of the crime proven beyond a reasonable doubt. State v. Booth , 2012 MT 40, ¶ 7, 364 Mont. 190, 272 P.3d 89 ; State v. Roberts , 194 Mont. 189, 195, 633 P.2d 1214, 1218-19 (1981) (citing Jackson v. Virginia , 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) ). We generally will not address issues raised for the first time ***143 on appeal. Weaver v. State , 2013 MT 247, ¶ 38, 371 Mont. 476, 310 P.3d 495 (internal citation omitted).
DISCUSSION
¶13 1. Whether the Municipal Court erroneously subjected McCarthy's asserted "substantial need" for the arresting officers' personnel files under § 46-15-322(5), MCA, to balancing with their constitutional right to privacy?
¶14 Upon request, the criminal prosecutor must permit defense discovery of various enumerated classes of "material and information," including, inter alia , all "statements" of potential state witnesses and "all material or information that tends to mitigate or negate the defendant's guilt as to the offense charged or that would tend to reduce the defendant's potential sentence." Section 46-15-322(1) - (2), MCA. Independent of § 46-15-322, MCA, and implied from the fundamental fair trial rights guaranteed to criminal defendants under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, criminal prosecutors have an affirmative duty to disclose all information and materials known to the prosecutor that are favorable to the accused and constitutionally material to the determination of his or her guilt or punishment. Brady , 373 U.S. at 87-88, 83 S. Ct. at 1196-97 ; Giglio , 405 U.S. at 153-55, 92 S. Ct. at 766.[3] However, the Brady / Giglio duty does not create a general constitutional discovery right entitling an accused to unfettered access to sift through all information available to the government that might be helpful at trial or sentencing. See Kyles v. Whitley , 514 U.S. 419, 437, 115 S. Ct. 1555, 1567, 131 L.Ed.2d 490 (1995) ; Pennsylvania v. Ritchie , 480 U.S. 39, 59-60, 107 S. Ct. 989, 1002, 94 L.Ed.2d 40 (1987) ; United States v. Bagley , 473 U.S. 667, 675 n.7, 105 S. Ct. 3375, 3379-80, 87 L.Ed.2d 481 (1985) ; Giglio , 405 U.S. at 154-55, 92 S. Ct. at 766. The scope of required disclosure is limited to exculpatory evidence and any other constitutionally material evidence tending to show that a prosecution witness is unreliable, biased, has an interest or motive to testify falsely, or has a character for untruthfulness. Bagley , 473 U.S. at 676-77, 105 S. Ct. at 3380-81 ; Giglio , 405 U.S. at 154-55, 92 S. Ct. at 766. Non-exculpatory information is constitutionally material only if nondisclosure would be ***144 reasonably likely to "undermine confidence" in the fairness of the trial or sentencing determination under the totality of the circumstances. Kyles , 514 U.S. at 434-38, 115 S. Ct. at 1566-68 ; Bagley , 473 U.S. at 678-82, 105 S. Ct. at 3381-83 ; Giglio , 405 U.S. at 154, 92 S. Ct. at 766. Non-exculpatory impeachment evidence is thus constitutionally material only where the subject witness provides the key "evidence linking the defendant(s) to the crime, or where the likely impact on the witness's credibility would ... undermine[ ] a critical element of the prosecution's case." United States v. Payne , 63 F.3d 1200, 1210 (2d Cir. 1995) (internal punctuation and citations omitted). See also Kyles , 514 U.S. at 441-54, 115 S. Ct. at 1569-76 (holding that contemplated impeachment of government eyewitnesses would have undermined their testimony and weakened effect of other untainted evidence essential to proof of guilt); Giglio , 405 U.S. at 154-55, 92 S. Ct. at 766 ; United States v. Dent , 149 F.3d 180, 191 (3rd Cir. 1998) (finding police misconduct in an unrelated drug case constitutionally material impeachment evidence in later drug case but denying discovery *1056 upon in camera review). Compare Payne , 63 F.3d at 1210 (otherwise admissible impeachment evidence not constitutionally material where other testimony or evidence corroborates the subject testimony or where the impeachment evidence "merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable"). In camera review is the necessary and proper means to balance an accused's due process rights with other compelling government interests including, e.g., privacy rights of government agents and third parties. See , e.g. , United States v. Jumah , 599 F.3d 799, 807-11 (7th Cir. 2010) (noting accused's burden "to establish" Brady / Giglio violation, insufficiency of unsupported speculative assertions, and failure to request in camera inspection). Accord Ritchie , 480 U.S. at 59-60, 107 S. Ct. at 1002-03 ; Dent , 149 F.3d at 191 ; United States v. Cadet , 727 F.2d 1453, 1467-69 (9th Cir. 1984) ; United States v. Jones , 612 F.2d 453, 456 (9th Cir. 1979).[4] ***145 ¶15 As a statutory matter independent of a prosecutor's Brady / Giglio duty, a defendant may, upon motion and in the discretion of the court, obtain extraordinary discovery, i.e., discovery of "additional material or information not otherwise provided for" by § 46-15-322(1) - (2), upon a showing that he or she (1) "has substantial need" for the requested information "in the preparation of the case," and (2) is "unable, without undue hardship, to obtain the substantial equivalent by other means...." Section 46-15-322(5), MCA. Here, the parties' briefing and resulting lower court rulings are replete with intermixed references to Brady / Giglio standards and information separately available under § 46-15-322(1) and (5), MCA. However, except for passing cursory reference to Brady / Giglio standards and § 46-15-322(1)(e), MCA ("material or information ... tend[ing] to mitigate or negate the defendant's guilt ... [or] reduce the ... potential sentence"), McCarthy provided no particularized explanation in the Municipal Court as to how or on what basis the arresting officers' pre-incident personnel records could conceivably include constitutionally material information or similar material discoverable under § 46-15-322(1)(e), MCA. In that regard, McCarthy further opposed the State's contingent request for an in camera inspection to determine whether and to what extent, if any, the officers' personnel records may have in fact included any information for which he asserted substantial need under § 46-15-322(5), MCA. Rather, based on a naked assertion of "substantial need," he asserted that he was entitled to indiscriminate discovery of the officers' pre-incident personnel files to unilaterally sift through them for any prior history of use of excessive force, without regard for their privacy interests. Under these circumstances, we have no obligation to formulate saving arguments or further develop McCarthy's passing references to potential Brady / Giglio information, or similar information under § 46-15-322(1)(e), MCA, and decline to address those matters further. ***146 Peterson , ¶ 48.[5]
¶16 As to his request for the officers' pre-incident personnel records pursuant to § 46-15-322(5), MCA, McCarthy asserts *1057 that the Municipal Court erroneously considered the officers' privacy rights with his asserted "substantial need" instead of exclusively assessing or analyzing his asserted need in isolation. McCarthy correctly points out that the Municipal Court did not first assess and determine whether he had "substantial need" for the officers' pre-incident personnel records. However, when a lower court affirmatively grants or denies a motion, the court's failure to explicitly address every argument or assertion in opposition to the ruling is an implicit rejection of those arguments or assertions and is not erroneous per se . See Masters Grp. Int'l, Inc. v. Comerica Bank , 2015 MT 192, ¶¶ 37-40, 380 Mont. 1, 352 P.3d 1101 ; State v. Hope , 2001 MT 207, ¶¶ 9-10, 306 Mont. 334, 33 P.3d 629 (distinguishing State v. Weaver , 276 Mont. 505, 509, 917 P.2d 437, 440 (1996)). See also United States v. Dubrule , 822 F.3d 866, 884-85 (6th Cir. 2016) ; United States v. Claxton , 766 F.3d 280, 290-91 (3rd Cir. 2014) ; United States v. Depew , 210 F.3d 1061, 1065 (9th Cir. 2000). Accordingly, in explicitly denying McCarthy's motion with reference to the officers' rights to privacy, the Municipal Court implicitly rejected or subordinated his predicate assertion of "substantial need" under § 46-15-322(5), MCA. Though his asserted purpose was to discover any prior history of the arresting officers' use of excessive force, McCarthy has yet to particularly articulate or show what legitimate "substantial need" he had for that information in the defense of this case as required by § 46-15-322(5), MCA. He has thus failed to meet his burden on appeal of demonstrating that the Municipal Court abused its discretion in implicitly rejecting his assertion of "substantial need" for the requested extraordinary discovery under § 46-15-322(5), MCA.
¶17 As to the central issue of whether an asserted "substantial need" under § 46-15-322(5), MCA, is even subject to balancing with implicated privacy rights as a threshold matter, all individuals, including police officers, have a fundamental Montana constitutional right to privacy. Mont. Const. art. II, § 10 ; State ex rel. Zander v. Fourth Judicial Dist. Ct. , 180 Mont. 548, 555-56, 591 P.2d 656, 660 (1979). While the existence and extent of the right necessarily depends ***147 in each case on whether the subject has an expectation of privacy that is both subjectively and objectively reasonable under the totality of the circumstances, State v. Goetz , 2008 MT 296, ¶¶ 25-31, 345 Mont. 421, 191 P.3d 489 ; Great Falls Tribune v. Cascade Cty. Sheriff , 238 Mont. 103, 105-07, 775 P.2d 1267, 1268-70 (1989), we have often recognized that private and public employees have a right to privacy in non-disclosure of employment personnel records regarding performance assessments, internal disciplinary matters, and other personally sensitive information. See Missoula Cty. Pub. Schs. v. Bitterroot Star , 2015 MT 95, ¶¶ 11-13, 378 Mont. 451, 345 P.3d 1035 ; Billings Gazette v. Billings , 2013 MT 334, ¶¶ 41-53, 372 Mont. 409, 313 P.3d 129 ( Gazette 2013 ); State v. Burns , 253 Mont. 37, 40-42, 830 P.2d 1318, 1320-22 (1992) ; Flesh v. Bd. of Trs. , 241 Mont. 158, 165-66, 786 P.2d 4, 9 (1990) ; Missoulian v. Bd. of Regents , 207 Mont. 513, 522-28, 675 P.2d 962, 967-70 (1984) ; Mont. Human Rights Div. v. Billings , 199 Mont. 434, 440-43, 649 P.2d 1283, 1287-88 (1982). See also Citizens to Recall Mayor Whitlock v. Whitlock , 255 Mont. 517, 523, 844 P.2d 74, 78 (1992) (noting elected official's conceivable reasonable expectation of privacy regarding "information related to private sexual activity, general performance evaluations, or proceedings" discussing official's "character, integrity, honesty, or personality"). However, due to the circumstantial nature of the right, we have also recognized that public employees, such as police officers, who hold "positions of great public trust" in the performance of their official duties generally have a reduced expectation of privacy regarding misconduct in violation of that trust or otherwise affecting their ability to perform their duties. Billings Gazette v. Billings , 2011 MT 293, ¶¶ 20, 22-29, 362 Mont. 522, 267 P.3d 11 ( Gazette 2011 ); Bozeman Daily Chronicle v. Bozeman Police Dep't , 260 Mont. 218, 225-27, 859 P.2d 435, 439-41 (1993) ; Whitlock , 255 Mont. at 522-23, 844 P.2d at 77-78 ; Cascade Cty. Sheriff , 238 Mont. at 105-07, 775 P.2d at 1268-70. As expressly provided by our state Constitution, an individual's right to privacy is not absolute and may be "infringed" upon "the showing of a compelling state interest." *1058 Mont. Const. art. II, Section 10. Depending upon the circumstances, such a "compelling state interest" may be the recognition or furtherance of a competing state or federal constitutional right, a statutory right or duty, or another government interest. See Missoula Cty. Pub. Schs. , ¶ 11 (balancing right to privacy with public right to know); Burns , 253 Mont. at 40-41, 830 P.2d at 1320-21 (balancing right to privacy with state interest in enforcement of criminal law); Mont. Human Rights Div. , 199 Mont. at 444, 649 P.2d at 1288 (balancing ***148 right to privacy with state constitutional right to equal protection and related state interest in enforcing Montana Human Rights Act). See also Great Falls Tribune v. Eighth Judicial Dist. Ct. , 186 Mont. 433, 437-39, 608 P.2d 116, 119 (1980) (balancing public right to know with federal and state constitutional rights of criminal defendants to speedy, fair, and impartial trials).
¶18 Section 46-15-322(5), MCA, is a provision of criminal procedure enacted by the Legislature in furtherance of Montana's compelling interest in providing fair trials in accordance with Title 46, MCA, and over-arching federal and state constitutional fair trial rights. In contrast, the right to individual privacy is an often-competing Montana constitutional right. Neither necessarily trumps the other in every circumstance. When an asserted or implicated right to individual privacy conflicts with enforcement or furtherance of a competing federal or state constitutional right or other compelling state interest furthered by law, courts must first assess the nature and extent of the asserted privacy interest (i.e., whether subjectively and objectively reasonable) under the totality of the circumstances at issue and then balance it with the competing constitutional right or other compelling state interest. See Missoula Cty. Pub. Schs. , ¶¶ 11-13 ; Gazette 2013 , ¶¶ 18-59 ; Gazette 2011 , ¶¶ 16-29 ; Bozeman Daily Chronicle , 260 Mont. at 225-28, 859 P.2d at 439-41 ; Whitlock , 255 Mont. at 522-24, 844 P.2d at 77-78 ; Burns , 253 Mont. at 40-43, 830 P.2d at 1320-22 ; Flesh , 241 Mont. at 165-66, 786 P.2d at 8-10 ; Cascade Cty. Sheriff , 238 Mont. at 105-07, 775 P.2d at 1268-70 ; Missoulian , 207 Mont. at 522-29, 675 P.2d at 967-71 ; Mont. Human Rights Div. , 199 Mont. at 440-46, 649 P.2d at 1287-90. Thus, when a criminal defendant's asserted "substantial need" for extraordinary discovery under § 46-15-322(5), MCA, conflicts with the right to privacy of an involved government agent or third party, courts must assess the nature and extent of the asserted right to privacy under the totality of the circumstances and then carefully balance it with the defendant's asserted need in furtherance of the fair trial rights afforded by Title 46, MCA, and the United States and Montana Constitutions.
¶19 McCarthy nonetheless asserts that our holdings in Peterson and State v. Romero , 279 Mont. 58, 74, 926 P.2d 717, 727 (1996), preclude consideration of implicated privacy rights once a defendant shows the requisite "substantial need" for extraordinary discovery under § 46-15-322(5), MCA. In Peterson , a criminal defendant who challenged whether the arresting officer had sufficient particularized suspicion to justify the investigative stop that led to his arrest asserted that the ***149 court erroneously determined that he failed to show "substantial need" for discovery of the arresting officer's personnel file under § 46-15-322(5), MCA. Peterson , ¶¶ 9, 42-44. After briefly discussing Brady / Giglio standards and noting that the defendant did not allege a Brady violation, we affirmed based on his failure to show a sufficient case-related need for the officer's personnel file. Peterson , ¶¶ 42-53. We referenced the officer's right to privacy only in noting that the defendant did not address a related State contention and in rejecting the defendant's new assertion, raised for the first time on appeal, that he was entitled to the personnel file based on the public's right to know under Article II, Section 9 of the Montana Constitution (public's right to know) and as applied in Cascade Cty. Sheriff , 238 Mont. at 105-07, 775 P.2d at 1268-70 (balancing officers' reduced expectation of privacy in re misconduct with public's right to know). Peterson , ¶ 51.
¶20 In Romero , as pertinent, a defendant convicted of various hunting violations asserted that the district court erroneously denied a defense motion in limine to preclude the investigating undercover state officer from testifying at trial in light of the State's *1059 refusal to permit discovery of the officer's personnel file. Romero , 279 Mont. at 73-74, 926 P.2d at 726-27. Noting that § 46-15-322(5), MCA, is the proper procedural vehicle for seeking discovery of an investigating officer's personnel file and that the defendant failed to file a § 46-15-322(5) motion to compel as advised by the district court, we affirmed. Romero , 279 Mont. at 73-74, 926 P.2d at 726-27. Without reference to the officer's right to privacy, we merely noted that, by failing to file a motion to compel, the defendant prevented the district court from assessing whether he in fact had a "substantial need" for such extraordinary discovery as required by § 46-15-322(5), MCA. Romero , 279 Mont. at 74, 926 P.2d at 727. Neither Peterson nor Romero considered whether balancing of competing privacy interests is necessary or proper once a defendant shows "substantial need" for extraordinary discovery under § 46-15-322(5), MCA. Peterson and Romero are thus of no consequence here.
¶21 McCarthy did not sufficiently challenge the actual balance of his asserted need for the arresting officers' personnel records and their implicated privacy interests in the Municipal Court. As in Peterson , he did not sufficiently raise a Brady / Giglio issue in the Municipal Court and has not sufficiently shown one on the record on appeal. More fundamentally, based on mere cursory assertion of a "substantial need" for the officers' pre-incident personnel records, McCarthy sufficiently challenged only the threshold question of whether an asserted "substantial need" for extraordinary discovery under ***150 § 46-15-322(5), MCA, is subject to assessment and balancing with implicated privacy interests. Under these circumstances, we hold that the Municipal Court correctly denied McCarthy's request for discovery of the arresting officers' pre-incident personnel records.
¶22 2. Whether the Municipal Court erroneously excluded examining physician testimony regarding the nature and extent of injuries sustained by McCarthy incident to arrest?
¶23 In response to the State's trial and pretrial objections pursuant to M. R. Evid. 402 - 03, the Municipal Court excluded defense-proffered physician testimony regarding the nature and extent of the injuries sustained by McCarthy incident to his arrest. The court reasoned that the testimony was only marginally relevant, if at all, given the elements of the offenses of obstructing and resisting a peace officer, the fact that Officer Lloyd had already testified regarding McCarthy's injuries incident to arrest, and that the physician did not examine him until the next day. The court thus essentially concluded that the danger of unfair prejudice substantially outweighed any probative value of the proffered testimony. McCarthy asserts that the court erroneously applied M. R. Evid. 403 because the nature and extent of his injuries were highly relevant to whether he "was physically incapable of resisting or obstructing, and [that] his conduct was consistent with [merely] defending himself against the punches and kicks" rather than knowingly obstructing and resisting the officers' attempt to arrest him as alleged. He asserts that Officer Lloyd's "non-medical, brief and general narrative" account of his injuries was insufficient to adequately support his asserted defense theory.
¶24 All evidence probative of a fact at issue is generally admissible. M. R. Evid. 402. Here, the State tacitly concedes that the proffered physician testimony had at least some marginal relevance in furtherance of McCarthy's asserted defense theory. However, a trial court may nonetheless exclude otherwise relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M. R. Evid. 403. While all probative evidence is generally prejudicial to the opposing party, evidence is "unfairly prejudicial only if it arouses the jury's hostility or sympathy for one side without regard to its probative value, if it confuses or misleads the trier of fact, or if it unduly distracts from the main issues." State v. Daffin , 2017 MT 76, ¶ 25, 387 Mont. 154, 392 P.3d 150 (quoting State v. Madplume , 2017 MT 40, ¶ 33, 386 Mont. 368, 390 P.3d 142 (internal punctuation *1060 omitted with emphasis added)). "[Trial] courts have broad ***151 discretion to weigh the relative probative value of evidence against the risk of unfair prejudice." Madplume , ¶ 32.
¶25 As referenced in M. R. Evid. 403, "unfair prejudice" refers "to the capacity of some concededly relevant evidence to lure the factfinder" into determining a disputed issue of fact "on a ground different from proof specific to" an essential element of proof of an asserted legal charge, claim, or defense at issue. Old Chief v. United States , 519 U.S. 172, 180, 117 S. Ct. 644, 650, 136 L.Ed.2d 574 (1997) (citing 1 J. Weinstein, M. Berger, & J. McLaughlin, Weinstein's Evidence ¶ 403[03] (1996)). In other words, "unfair prejudice" refers to evidence that presents an undue risk that the factfinder will decide the disputed issue of fact "on an improper basis, commonly, though not necessarily, an emotional one." Old Chief , 519 U.S. at 180, 117 S. Ct. at 650 (citing Advisory Committee Notes to Fed. R. Evid. 403 ). Accord State v. Belanus , 2010 MT 204, ¶ 14, 357 Mont. 463, 240 P.3d 1021 (evidence that "will prompt the jury to decide the case on an improper basis" is unfairly prejudicial).
¶26 Here, as noted by the Municipal Court, Officer Lloyd had already testified that McCarthy was in immediate need of medical care as a result of his struggle with the arresting officers. Lloyd testified that McCarthy was taken to the emergency room for x-rays and treated for a collapsed lung among other injuries. Two of the officers' body camera video/audio recordings captured the struggle with McCarthy on the ground, revealing at least two officers repeatedly punching, kneeing, and kicking him in the side, his verbal wailing and other expressions of pain, his resulting inability to stand and walk without assistance, and his repeated post-custody exclamations or questions as to why or how the officers "kicked the shit out of [him]." Though the physician could have testified that McCarthy's injuries were consistent with being repeatedly punched and kicked, the proffered testimony was limited to the nature and extent of McCarthy's injuries as observed the next day and could not account for the circumstances under which the injuries occurred or how they in fact affected his intent or ability to obstruct and resist as alleged by the State. The proffered physician testimony in any event had no bearing on McCarthy's mental state or physical ability to obstruct or resist prior to the fact of the alleged obstruction and resistance that precipitated the officers' ensuing use of force.
¶27 Pursuant to §§ 45-7-301(2) and -302(2), MCA (legality of an arrest no defense to obstructing or resisting arrest), and M. R. Evid. 402, the injuries sustained by McCarthy after his alleged refusal to comply with ***152 officer commands and his pre-injury physical resistance to the officers' initial use of force are not probative of whether he obstructed or resisted prior to that resulting use of force and injury. There is no evidence or assertion that McCarthy was injured prior to his alleged failure to comply and submit to arrest. Under these circumstances, the primary, if not exclusive, purpose and effect of additional evidence regarding the nature and extent of his injuries would have been to create sympathy for McCarthy, and prejudice against the officers regarding the amount of force used, thus inviting the jury to decide his guilt or innocence on that basis rather than the sufficiency of the State's proof on the elements of the charged offenses. Given these circumstances, we cannot say that the Municipal Court abused its discretion under M. R. Evid. 403. We hold that the Municipal Court did not erroneously exclude McCarthy's proffered physician testimony regarding the nature and extent of the injuries he sustained incident to arrest.
¶28 3. Whether sufficient evidence existed to sustain McCarthy's conviction for obstructing a peace officer as defined by § 45-7-302, MCA ?
¶29 McCarthy asserts that insufficient evidence existed to convict him of obstructing a peace officer because, at the time he was attempting to apprehend McCarthy, Officer Lloyd was not yet engaged in an investigation and McCarthy thus could not have "knowingly obstruct[ed], impair[ed], or hinder[ed] the enforcement of the criminal law" as referenced in § 45-7-302(1), MCA. Citing *1061 Missoula v. Asbury , 265 Mont. 14, 20, 873 P.2d 936, 939 (1994), the State asserts that McCarthy waived this issue by failing to raise it on intermediate appeal to the District Court. McCarthy asserts that the issue is properly before this Court pursuant to State v. Akers , 2017 MT 311, 389 Mont. 531, 408 P.3d 142.
¶30 In Asbury , following an unsuccessful intermediate appeal to district court, multiple protesters, who had blocked the doors of a Missoula abortion clinic and otherwise interfered with persons desiring to utilize the clinic, ultimately appealed their various municipal court convictions to this Court. Asbury , 265 Mont. at 16, 873 P.2d at 937.[6] Though various defendants raised an international law/treaty defense in municipal court in support of their motions to dismiss, we held that ***153 they failed to preserve and thus waived the issue for ultimate appeal to this Court by failing to raise it on intermediate appeal. Asbury , 265 Mont. at 19-20, 873 P.2d at 939.
¶31 In Akers , on appeal of an unsuccessful intermediate appeal to district court on other grounds, a defendant convicted of misdemeanor assault further asserted for the first time on appeal here that the justice court erroneously failed to properly instruct the jury on the affirmative defense of justifiable use of force. Akers , ¶¶ 2-8. Noting that, unlike in Asbury , the defendant had not previously raised the issue in any court, we recognized that he waived appellate review by this Court under the general rule of Asbury . See Akers , ¶¶ 19-20. However, distinguishing Asbury as a mere application of the general rule without consideration of the plain error exception, we rejected the State's waiver argument, holding that despite the defendant's failure to raise the issue in both courts below, the issue was still subject to plain error review on ultimate appeal to this Court. Akers , ¶ 20. Finding error, we exercised plain error review and reversed. Akers , ¶ 20-21.
¶32 Reaffirming Asbury synthesized with Akers , the failure to raise an appealable issue, whether preserved in the trial court or not, on intermediate appeal from a lower court of record generally constitutes an implied waiver of the issue for ultimate appeal to this Court. See Akers , ¶ 20 ; Asbury , 265 Mont. at 19-20, 873 P.2d at 939. As a narrow exception to this general rule, waiver by failure to raise an issue in the lower court or on intermediate appeal does not preclude plain error review on ultimate appeal here. Akers , ¶ 20. However, plain error review is in any event available only in our discretion under extraordinary circumstances where: (1) a constitutional or other substantial right is at issue; (2) the error is plain (i.e., obvious), and (3) we are "firmly convinced" that failure to review the issue will compromise the fundamental fairness or integrity of the proceeding, thereby resulting in a "manifest miscarriage of justice...." In re H.T. , 2015 MT 41, ¶ 14, 378 Mont. 206, 343 P.3d 159 (internal punctuation and citation omitted); State v. Earl , 2003 MT 158, ¶ 25, 316 Mont. 263, 71 P.3d 1201. We will employ the plain error doctrine only "sparingly, on a case-by-case basis," and will not use or allow it to become "a prophylactic for careless counsel." Earl , ¶ 25 (internal punctuation and citation omitted). While we may exercise plain error review sua sponte in extraordinary cases, the appellant generally has the burden of clearly demonstrating the appropriateness of plain error review. See Akers , ¶ 20.
***154 ¶33 Here, under the general rule of Asbury , McCarthy implicitly waived his sufficiency of the evidence challenge by failing to raise it on intermediate appeal. The issue is therefore subject to review on direct appeal only as plain error, in our discretion. In that regard, substantial record evidence manifests that Officer Lloyd was immediately pursuing and then attempting to apprehend McCarthy in response to a 911 report of criminal activity and Kelsey's subsequent on-scene alert and identification of him as a suspect in that activity. Lloyd testified that after identifying himself as a police officer, he commanded McCarthy to place his hands in the air and that he did not immediately comply. The sufficiency of the trial evidence *1062 to support a conviction is presumed on appeal. See State v. Gomez , 2007 MT 111, ¶ 33, 337 Mont. 219, 158 P.3d 442 ; State v. Wong Sun , 114 Mont. 185, 193, 133 P.2d 761, 764 (1943). McCarthy has failed to demonstrate and we find no compelling basis upon which to exercise plain error review in this case. Accordingly, we decline to review the sufficiency of the evidence for plain error.
CONCLUSION
¶34 We hold that the Municipal Court correctly denied McCarthy's request for discovery of the arresting officers' pre-incident personnel records. We hold that the Municipal Court did not erroneously exclude McCarthy's proffered physician testimony regarding the nature and extent of the injuries he sustained incident to arrest. We decline to review the sufficiency of the evidence for plain error.
¶35 Affirmed.
We concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
BETH BAKER, J.
JIM RICE, J.

The State euphemistically refers to the officers' punching and kneeing as the administration of "distraction strikes."

See Brady v. Maryland , 373 U.S. 83, 87-88, 83 S. Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963) and Giglio v. United States , 405 U.S. 150, 154-55, 92 S. Ct. 763, 766, 31 L.Ed.2d 104 (1972).

See also Danforth v. Minnesota , 552 U.S. 264, 269-70, 128 S. Ct. 1029, 1034-35, 169 L.Ed.2d 859 (2008) (internal citation omitted) (discussing due process right to fair trial derived from "minimum standards of fairness ... implicit in the concept of ordered liberty" within the framework of the protective rights provided by the U.S. Constitution).

While we have yet to squarely address whether an accused's due process and confrontation rights under Montana Constitution Article II, Sections 17 and 24 are coextensive with those afforded under the Fourteenth Amendment, our prior decisions are seemingly in substantial accord with federal due process standards. See State v. Duffy , 2000 MT 186, ¶¶ 19-21, 300 Mont. 381, 6 P.3d 453 (in camera inspection adequately balances defendant's due process and confrontation rights with third-party privacy interests); State v. Donnelly , 244 Mont. 371, 375-77, 798 P.2d 89, 91-93 (1990) (in camera inspection adequately balances defendant's due process and confrontation rights with third-party privacy interests), overruled on other grounds by State v. Imlay , 249 Mont. 82, 89-91, 813 P.2d 979, 984-85 (1991) ; State v. Reynolds , 243 Mont. 1, 8, 792 P.2d 1111, 1115 (1990) (no due process right to discover third-party psychological records). Compare § 46-15-322(1)(e), MCA (similar but distinct statutory duty to "make available" upon request "all material or information that tends to mitigate or negate the defendant's guilt as to the offense charged or that would tend to reduce the defendant's potential sentence").

We thus need not address McCarthy's side argument that Brady / Giglio require the prosecutor, not the involved law enforcement agency, to determine whether information or material known to law enforcement is exculpatory or otherwise constitutionally material.

The defendants were convicted of misdemeanor criminal trespass, "criminal contempt," and "failure of disorderly persons to disperse." Asbury , 265 Mont. at 16, 873 P.2d at 937.